No. 23,701.

THE SOLOMON NATIONAL BANK, *Appellant,* v. LESTER BIRCH et al.,
*Appellees.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE — *Not Bearing Internal Revenue Stamp — Transfer — Holder in Due Course.* The fact that previous to the transfer of a negotiable note it did not bear an internal-revenue stamp, and that one was at that time placed upon it by the person negotiating the transfer in behalf of the holder, does not prevent it from being complete and regular on its face at the time of its acquisition by the transferee, nor prevent his becoming a holder in due course.

2. SAME—*Holder in Due Course—Good Faith—Unavailable Defenses.* In an action upon a negotiable note complete and regular on its face, where the plaintiff claims to be a holder in due course and proves by records obviously made at the purported time of the transaction that he became the owner before maturity and for value, unless the steps taken by him were merely colorable, a finding that he did not purchase it in bad faith renders defenses of fraud and illegality in the inception of the note unavailable against him.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed May 6, 1922. Reversed.

*David Ritchie,* and *Omer D. Smith,* both of Salina, for the appellant.

*R. W. Turner, Donald Stanley, R. B. Turner,* all of Mankato, *F. A. Lutz,* and *A. E. Jordan,* both of Beloit, for the appellees.

The opinion of the court was delivered by

MASON, J.: The Solomon National Bank sued Lester Birch and Dallas U. Birch upon two negotiable notes executed by them to their own order and endorsed by them and by Felix Broeker. The defendants answered setting up that the notes were executed by them for stock in the Okla-Queen Oil Company and were procured from them by fraudulent representations as to its value; and also that the transaction was illegal because the sale was made in violation of the blue-sky law. (Gen. Stat. 1915, §§ 9458-9475.) Both issues were submitted to the jury, together with the question whether the plaintiff was a holder of the notes in due course. A general verdict was returned in favor of the defendants, on which judgment was rendered. The plaintiff appeals.

The plaintiff contends that it was entitled to a judgment by virtue of special findings of the jury to the effect that the plaintiff did not have actual notice or knowledge that the notes in question were obtained by fraud and did not purchase them in bad faith. These findings obviously acquit the plaintiff of either actual or constructive notice of any fraudulent representations having been made. The defendants correctly assert, however, that in order to constitute the plaintiff a holder in due course, so far even as concerns the question of fraud, it was necessary not only that it should have acquired the notes without actual notice of the fraud and without bad faith, but that also (1) the notes should have been complete and regular on their face, (2) the plaintiff should have become the holder before maturity, and (3) taken them in good faith and for value. (Gen. Stat. 1915, § 6579; Uniform Negotiable Instruments Act, § 52.)

1. When the notes were first brought to the plaintiff they bore no revenue stamps, but these were affixed at the time of the transfer by the person who negotiated the deal in behalf of the former holder. The defendants argue that because of this fact that the notes when acquired by the plaintiff were not "complete and regular on their face." This contention is supported by *Lutton v. Baker*, 187 Iowa, 753, which is annotated in 6 A. L. R. 1701. The note cites cases of a contrary tendency and suggests that the decision appears possibly to have been influenced by an earlier view of that court, since abandoned, that the omission of a stamp invalidated the instrument. We do not think the circumstance that a note was not stamped when it was executed, where a sufficient stamp is attached and canceled at

Bank v. Birch.

the time of its transfer, prevents it from being then complete and regular on its face or precludes the transferee from becoming a holder in due course. We regard the terms complete and regular as referring to the condition of the note itself, with regard to its contents, execution (of which the affixing of a stamp is no part) and endorsement. The stamp is merely evidence of the payment of a tax. Provisions of an act of congress that an instrument shall not be received in evidence without the required stamp are held by most of the courts which have considered the question (not including that of Iowa, however) to relate to federal and not to state procedure. When the omission to stamp an instrument was not fraudulent it does not invalidate the instrument, and may be remedied at any time, even after an action has been brought. (3 R. C. L. 923, 924; 8 C. J. 112, 113.) It is not suggested that the failure to attach stamps to the notes at the time of their execution was due to a purpose to defraud the government. Such suggestion could hardly be made in behalf of the defendants since the primary duty in that respect rested upon them. No question on this or any other phase of the stamp matter was submitted to the jury, nor does it appear that the attention of the trial court was in any way directed to it.

2. That the notes as a physical fact came into the hands of the plaintiff on November 1 and 10, 1917, and that a certificate of deposit, a cashier's check and a draft which were returned to the bank as paid were then issued in exchange for them does not admit of substantial doubt. The records of the bank demonstrate that at least the forms of a purchase for value were gone through with at that time. If the plaintiff were not a purchaser before maturity in good faith and for value, this could only have been because the steps taken were only colorable—were a mere sham, although regular on their face—and this hypothesis we regard as negatived by the finding that the plaintiff did not purchase the notes in bad faith. If the plaintiff caused records to be made showing it to have been a purchaser before maturity and for value, when the fact was otherwise— if for instance it was merely acting in behalf of the Traders State Bank, of Salina, from which it acquired them, receiving them to hold for the benefit of that bank—it necessarily had knowledge of such facts that its action in taking the notes amounted to bad faith as the term is used in the statute. (Gen. Stat. 1915, § 6583; Uniform Negotiable Instruments Act, § 56.)

Whether the special findings require the conclusion that the plaintiff was a holder of the notes in due course with respect also to the defense of illegality in the violation of the blue-sky law is more debatable, because it might be argued that while the jury were of the opinion that the plaintiff did not have actual notice or knowledge that the notes were obtained by fraud they may have thought it did have actual notice' or knowledge of the violation of the blue-sky statute. This seems hardly possible as a practical matter and we think it irreconcilable with the finding that the bank did not purchase the notes in bad faith. Fraud or illegality in the inception of a note makes the payee's title defective (Gen. Stat. 1915, § 6582; Uniform Negotiable Instruments Act, § 55) and throws upon the holder the burden of proving its acquisition in due course (Gen. Stat. 1915, § 6586; Uniform Negotiable Instruments Act, § 59). This the plaintiff could meet in the present case by showing both that it had no actual knowledge of an infirmity in the instrument or defect in the title, and that it had no knowledge of such facts that its action in taking it amounted to bad faith. (Gen. Stat. 1915, § 6583; Uniform Negotiable Instruments Act, § 56.) One is not a holder in due course if he takes the note (1) with actual knowledge of facts constituting a defense, or (2) with knowledge of such facts that his taking it was in bad faith. The absence of bad faith implies a want of knowledge of even such suspicious circumstances as would charge him with constructive notice of the existence of a defense, and as the greater includes the less it must also, and more strongly, imply a want of that fuller information which is characterized as actual knowledge. We conclude that the jury's finding that the plaintiff did not purchase the notes in bad faith, in view of the matters already suggested, amounts to a decision that it was a holder in due course and therefore neither the fraud nor illegality in the inception of the notes constituted a defense against it.

The judgment is reversed and the cause is remanded with direction to render judgment for the plaintiff.