No. 24,097.

MANHATTAN STATE BANK, *Appellant,* v. GEORGE MCLAREN, ALICE HAZLETT MCLAREN, CATHERINE CHARLOTTE MCLAREN, Drug Habitué, and W. A. HALE, her Guardian, *Appellees.*

SYLLABUS BY THE COURT.

1. MORTGAGE FORECLOSURE—*Fraud of Mortgagor—Deed from Insane Person —Valid Mortgage Lien.* A bank agreed to make a loan to a borrower upon his giving a mortgage upon his land, after he had procured a conveyance to himself of a life estate owned by a sister, to which his title was subject. The borrower fraudulently induced his sister, who was mentally incapable to transact business, but had not been so adjudged, to convey her interest to him, and afterwards the borrower executed a mortgage to the bank which paid the full amount of the loan. *Held,* that the bank obtained a valid lien unless it knew of the incapacity of the sister to convey or of the fraud of the borrower in obtaining the conveyance, or had knowledge of such facts and circumstances as made it chargeable with notice of such incapacity and fraud.

2. SAME—*Fraud of Mortgagor—Facts Shown Insufficient to Charge Mortgagee With Notice of the Fraud.* The fact that the bank knew that the borrower was in financial straits and without means to pay for the life estate, known by it to be of considerable value, and that the deed which it prepared named a consideration of one dollar, is in itself insufficient to show that the bank was chargeable with knowledge or notice of the incapacity of the grantor of the life estate or of the fraud of the borrower in obtaining a conveyance of such estate.

Appeal from Ottawa district court; DALLAS GROVER, judge. Opinion filed January 6, 1923. Reversed.

*F. D. Boyce,* of Minneapolis, and *C. B. Daughters,* of Manhattan, for the appellant.

*E. C. Sweet,* of Minneapolis, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the Manhattan State Bank to recover upon a promissory note for $8,750, and to foreclose a mortgage on real estate executed by George McLaren and his wife,

Alice H. McLaren, to secure the payment of the note. Judgment was given against the makers of the note for the amount due thereon and for the foreclosure of the undivided interest owned by George Mc-Laren and his wife about which there was no question, subject to a life estate in the defendant Catherine Charlotte McLaren. It was further determined that the deed which the latter had given to George McLaren conveying her life estate to him before the mortgage was executed was null and void, and as to that interest a foreclosure was refused. The plaintiff appeals, and contends that the deed of Catherine to George cannot be regarded as void as against the bank, that it had no knowledge or notice of the incompetency of Catherine to make a deed, and the finding of the court, that it had knowledge of facts and circumstances sufficient to constitute notice, that the deed was improperly obtained by George was without support in the evidence.

Hannah Dice McLaren, the mother of the parties owned one-half section of land at the time of her death. She had made a will in which she gave a life estate to Catherine and the remainder in fee to her sons, George, John and James, in equal shares. From the evidence adduced, the court found, that when the deed was executed by Catherine to George she was then and for a long time had been a drug habitué, and was mentally incapable of managing her affairs or of understanding the nature of a conveyance. Subsequently, and on January 20, 1920, she was adjudged to be incompetent by the probate court, and a guardian of her person and estate was appointed. As to the knowledge of the plaintiff of the incompetency of Catherine, the court found:

"At the time of the execution of the deed and the $8,700.00 mortgage the defendant George McLaren was insolvent, and the plaintiff bank knew that he was in financial straits. The plaintiff also knew that said Catherine Charlotte McLaren was at said time the owner of a life estate in the land in controversy; that said life estate was of the value of $500.00 a year; that said George McLaren had no means with which to purchase said life estate and that the deed obtained from said Catherine Charlotte McLaren was without consideration. Also plaintiff at said time knew the value of the land.

"Plaintiff had knowledge of facts and circumstances sufficient to constitute notice that the deed from said Catherine Charlotte McLaren to said defendant George McLaren was obtained by said George McLaren by improper means and that as between said Catherine Charlotte and said George said deed was null and void."

The turning point in this appeal is whether evidence was intro-

duced showing that the bank had knowledge of the incompetency of Catherine; of the fact that the deed she executed was obtained by improper means, or that it had knowledge of facts and circumstances sufficient to constitute notice of the fraud. If it had such knowledge or notice, the deed would not only be void as between George and Catherine but without validity as to the bank in respect to Catherine's interest, and the mortgage obtained by the bank would be ineffectual as to that interest. (*Waller v. Julius,* 68 Kan. 314, 74 Pac. 157.) When the mortgage was executed Catherine had not been adjudged to be incompetent. As between George and Catherine it may be assumed that he had knowledge of the incompetency and of the invalidity of the deed, but a conveyance or mortgage obtained in good faith from one not previously declared insane is only voidable and will not be set aside unless he had knowledge of the insanity and fraud. (*Gribben v. Maxwell,* 34 Kan. 8, 7 Pac. 584.) In *Myers v. Knabe,* 51 Kan. 720, 33 Pac. 602, it was said:

"A contract or conveyance made fairly and in good faith with a lunatic who is apparently sane, and before any finding of lunacy is made, cannot be annulled by a mere showing of incapacity at the time it was made. If the other party entered into the contract without any knowledge of the insanity, his equitable rights must be protected before there can be a rescission or annulment."

The deed in question may have been void as to George and only voidable as to the bank. He paid no consideration for the conveyance, but the bank paid full consideration for its mortgage. If it took the mortgage in good faith, having paid full consideration and without notice of the fraud of George in obtaining the deed to the property on which the mortgage was given, it would be in the attitude of an innocent purchaser from a grantee who had fraudulently obtained the conveyance. In such a case it has been held that, "the title of a purchaser for value without notice from the grantee of a lunatic is good against the heirs of the lunatic. (See *Odom v. Riddick,* 104 N. C. 515.)

In a leading English case it was held that if a conveyance is fraudulently obtained from an alleged lunatic and for an inadequate consideration, a purchaser from such grantee for a sufficient consideration and without notice would be protected the same as any other purchaser for value without notice of the fraud from a fraudulent alienee. (*Greenslade v. Dare,* 20 Beav. Rep. 284.) In *Phillips v. Murphy and Gary,* 186 Ky. 763, where it was claimed that a

party had fraudulently procured a deed from one mentally incapable of making a conveyance, and such party afterwards conveyed the land to a grantee who had no knowledge of the incapacity or of the fraud of his grantor and was not in possession of such facts or circumstances as should have put him on inquiry, the latter would acquire a good title. See, also, *Lack v. Brecht,* 166 Mo. 242; *Arnett's Committee v. Owens,* 23 Ky. Law Rep. 1409; *Abbott v. Creal,* 56 Ia. 175. From these authorities it is seen that the trial court rightly held that to deprive the bank of its lien upon the interest of Catherine it should be shown that it had knowledge of the incapacity of Catherine or of the fraud of George in procuring the deed from her, or of facts and circumstances sufficient to constitute notice of such incapacity or fraud. From the evidence it does not appear that the bank or its officers had learned from any source that Catherine was an habitual user of narcotics and incapable of making a conveyance. The most that the officers of the bank knew was that George was in financial straits, that he was already indebted to the bank for more than $3,000, and that in order to clear up his indebtedness to the bank and others, it would require an advance to him of more than $5,000, making a total of $8,750. It was unwilling to accept as security a lien on the interest held by George in the land unless he obtained the conveyance of the life estate of Catherine to which his interest was subject. He agreed to procure it, and one of the officers of the bank prepared the deed and therefore knew the consideration ($1.00) named in the deed was inadequate. It knew the value of the land and that the life estate was valuable, said to be worth $500 per year, and that George had no money with which to pay for that interest. These are the facts and circumstances upon which defendant relies to show that the bank had notice of the improper means employed by George in obtaining the deed. While courts carefully scrutinize the circumstances attending the obtaining of contracts or conveyances from one mentally incapable of making it, and circumstances which tend to show knowledge or notice of the incapacity or fraud, we conclude that the evidence produced at the trial is not sufficient to support the finding that the bank had knowledge or notice of the incapacity of Catherine or that the deed from her was obtained by improper means. Starting with the conceded fact that the officers of the bank had no notice of the incapacity of Catherine, the question arises, do the circumstances that George was in financial straits and that only a nominal con-

sideration was named in the deed warrant an inference that improper means were used to procure the execution of the deed? Catherine lived and the land was situated in another county, eighty miles or more distant from Manhattan, where the bank was engaged in business. While the officers of the bank had learned of the value of the land and necessarily knew that the consideration named in the deed was nominal, and also knew that George was without means to pay its actual value, may they not have inferred that his sister was willing to aid him in clearing up his indebtedness so that he might continue his mercantile business? The circumstance that one in financial straits should appeal for and receive aid from members of his family is not uncommon. They may be willing to give him money or property to save him from business failure or to protect his credit and reputation, trusting him to reimburse them after his credit is reëstablished. If the bank had had an inkling of the incompetency of Catherine, the circumstances mentioned would seem more material. It advanced George a large credit beyond the amount he owed the bank, for which the mortgage was given, but the testimony is that the entire amount was used to pay his obligations. He was a customer of the bank and was asking it to help him square with his creditors and enable him to go forward with his business. They agreed to make the loan upon a mortgage upon his land in case he acquired a complete title to it. This he undertook to do. Notwithstanding his lack of means to purchase, it could have been done honestly through the friendly assistance of his sister if she had been capable and actuated by desire to accommodate him. Under the circumstances, should dishonesty have been inferred? Our view is that the evidence is not sufficient to show that the bank was chargeable with notice that the deed was obtained dishonestly.

There not being sufficient evidence to sustain the findings of the court as to that element of the case, the judgment will be reversed and the cause remanded for a new trial.