No. 24,159.

THE RANCHMENS TRUST COMPANY, *Appellant,* v. R. H. GILL, *Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Holder in Due Course—Evidence—Erroneous Instruction.* In an action upon a promissory note by one claiming to be a holder in due course, the court is not authorized to instruct the jury as a matter of law that the plaintiff is not a holder in due course when such instruction is attempted to be justified because the note was made payable to the maker and by him indorsed, or because the internal revenue stamps were placed upon the note and canceled at the time plaintiff purchased it, or because of the evidence pertaining to the purchase of the note by plaintiff when such evidence is controverted.

2. SAME—*Offered for Discount to Trust Company—Trust Company Requiring Guaranty Against Infirmities—Salesman Procuring Guaranty Not Agent of Trust Company.* Where a salesman of corporate stock received in payment thereof a negotiable promissory note which he offered for discount to a trust company, and the president of the trust company before purchasing the note required a statement, which he dictated and gave to the salesman to be signed by the maker, stating in substance that the maker had executed the note in good faith and for value; that he had no defenses against

it and expected to pay it when due, the salesman is not the agent of the trust company in procuring the maker's signature to such a statement.

3. SAME—*Maker's Written Statement as to Genuineness of Note—When Statement May Work Estoppel to Plead Fraud.* Where one executes a negotiable promissory note and afterwards signs a statement, to a prospective purchaser of the note, to the effect that he executed the note in good faith and for value, that he had no defenses against it and expected to pay it when due, it must be found that he signed the statement with knowledge of its contents before it will operate to estop him from making a defense of fraud in the inception of the note and failure of consideration.

4. SAME—*Purchase of Note—Holder in Due Course—Evidence.* Where a trust company and a bank are separate corporations, though having the same persons as officers, and the trust company purchases a note and pays for it in part by issuing negotiable certificates of deposit, and in part by arranging a credit in the bank as directed by the person from whom the note was purchased, the trust company has thereby parted with the purchase price of the note and, if a holder in due course, is such holder for the full amount of the note, even though the certificates of deposit have not all been taken up by the trust company, or the accounts in the bank have not been completely drawn out, at the time the trust company first learns that there may be some defense to the note by reason of fraud in its inception.

5. SAME—*Holder in Due Course—Issue for a Jury.* Whether the holder of a negotiable promissory note, the execution of which was induced by fraudulent representations, became the holder thereof under such circumstances as to be a holder in due course is, ordinarily, a jury question.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed April 7, 1923. Reversed.

*Jean Madalene,* of Wichita, *R. W. Turner,* and *D. F. Stanley,* both of Mankato, for the appellant.

*Park B. Pulsifer, Clyde L. Short, Charles L. Hunt,* and *C. J. Putt,* all of Concordia, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a promissory note. There was a trial to a jury, which returned special findings and a general verdict for defendant. The plaintiff moved to set aside certain findings, for judgment in its favor on the other findings, and for a new trial, which motions were overruled and judgment entered on the general verdict. The plaintiff appealed and assigns as error the rulings and judgment of the court.

The petition set out the note and alleged that plaintiff was the holder thereof in due course. The answer contained a general de-

Trust Co. v. Gill.

nial; alleged that plaintiff was not the owner or holder of said note; that plaintiff was the agent, representative and associate of one W. C. West, who had procured the note from defendant by fraudulent representations, setting them out; and failure of consideration. The reply denied the new matter in the answer and alleged estoppel by a certain letter, later known in the case as plaintiff's exhibit No. 2.

From the evidence it appears that the Red Ball Petroleum Products Company, a corporation organized under the laws of the state of Kansas, with a capital stock of $100,000, had issued $82,000 of its stock to its incorporators for promotion services; that it had practically no cash on hand, and that its material assets were small. The purpose of the company was to establish oil filling stations in various towns in the state, which stations were to be built by proceeds arising from the sale of profit-sharing certificates issued by the company, the plan being to sell enough of such certificates in one town to build the station at that place. It seems that several promoters pooled a block of their stock and one W. C. West, who appears to have had some experience as a stock salesman, undertook to sell this stock. The defendant, R. H. Gill, was a well-to-do farmer living near Clyde, Kan., and for twenty years had been president of one of the banks at Clyde, though having little to do with its active management. West went to Gill's farm and endeavored to sell Gill some of the stock, representing that the company had a capital stock of $100,000, of which $82,000 had been issued; that the company desired to sell some of its stock to use the money in its business; that the company was a going concern and paying good dividends; explained the plan of putting in the filling stations, said they had several in operation and particularly mentioned the towns of McPherson and Lindsborg; that they planned to put one in at Clyde, expected to put in twenty in the state, and otherwise made representations that the stock which he was offering for sale was worth its face value or more. Gill agreed to buy $10,000 worth of the stock and executed his note for that sum, payable to himself and indorsed by him.

West endeavored to sell this note to one or more of the banks at Clyde, but not succeeding, went to Wichita and offered to sell it to the plaintiff. The Ranchmens Trust Company is a corporation doing a general trust company business at Wichita, occupying the same rooms with the Ranchmens State Bank, also a corporation and doing a general banking business, and the two institutions are

officered by the same individuals. When West offered the note for discount to the plaintiff, its president, Mr. Benson, said that he would like to investigate the matter and wrote letters to bankers at Clyde inquiring about Gill's financial standing and also wrote a letter to Gill. Mr. Gill replied by writing on the bottom of the letter, the letter and reply being as follows:

*"Mr. R. H. Gill,*                                    "WICHITA, KANSAS, July 2, 1920.
*"Clyde, Kansas.*

"DEAR SIR: We have been offered a note signed by yourself for $10,000 due November 1, 1920. This note was made payable to yourself and is endorsed by yourself, and is held by the Red Ball Petroleum Company. What we desire to know is if we should purchase this note would it be perfectly satisfactory to you, and if there is any agreement or understanding with you as maker of this note to these people that would in any way affect the payment of this note as above described. We do not desire to purchase paper made by any one concerning which there is any question as to legality of the note or any side agreement as to its payment. Will you please let us hear from you.

                                                           Respectfully yours,
"WFB:GER                                          W. F. BENSON, *President."*

*"Mr. W. F. Benson.*

"DEAR SIR: I expect to pay this note you mention without trouble unless Mr. West misrepresented things to get it and I have no reason to think that he did as I took him to be straight and all right.          "Yours respectfully,
                                                           "R. H. GILL."

Upon receiving this reply Mr. Benson stated to West when he called again that if he bought this note he wanted to be sure that it was absolutely clean—no question about it—and that he would not buy it unless Mr. Gill would be willinig to make a statement that it was perfectly right and that he expected to pay it. West replied that the note was all right and if Benson would dictate the kind of a statement that would be satisfactory, he would have Mr. Gill sign it, whereupon Benson dictated the following letter:

"THE RANCHMENS TRUST COMPANY AND THE RANCHMENS STATE BANK
"Combined Capital $600,000
                                                   "WICHITA, KANSAS, July 7, 1920.
*"To the Ranchmens Trust Company,*
                        or
*"To the Ranchmens State Bank,*
  - *"Wichita, Kansas.*

"GENTLEMEN: I have made my note to the order of myself and endorsed by myself of which the following is a true copy:

"$10,000.00                                                  JUNE 30, 1920.

"On or before November 1st, 1920, after date I promise to pay to the order of myself Ten Thousand and no-100 Dollars, with interest at eight per cent

Trust Co. v. Gill.

per annum, payable at 7 per cent if paid at maturity without defalcation and for value received.                    "(Signed)        R. H. Gill.

"This note was given in good faith and for value received. There are no claims or offsets of any kind or character claimed by me as offset against the payment of this note, and I intend to pay the same promptly at maturity and you have my full consent to the purchase of this note with this understanding.

"Respectfully yours,        R. H. Gill."

This is the letter pleaded by plaintiff in its reply as an estoppel and which became known in the case as plaintiff's exhibit 2. Benson handed this letter to West and said that if Gill would be willing to sign that kind of a statement, he would buy the note. West took the letter and also took the certificates of stock which Gill had purchased and which had not previously been delivered to him and went to see Gill. It seems that Gill is a man seventy-two years of age and was out in the field when West saw him; that he did not have his glasses with him and could not read without them and that West read or purported to read the letter, plaintiff's exhibit "2," to Gill, which he signed. Gill testified that West did not read this letter but told him that the instrument was a receipt for the shares of stock then being delivered and that when he read it, he read it as a receipt for the shares of stock and did not, in fact, read any of the real contents of the letter. This was denied by West, who testified that he explained the matter in full and read it correctly and that Gill understood it when he signed it. At any rate, the letter was signed by Gill and West took it to the plaintiff trust company and gave it to Benson, whereupon plaintiff purchased the note with a discount of $529.47, and paid for it by issuing negotiable time certificates of deposit, aggregating $7,500, and by direction of West deposited in the Ranchmens State Bank, to the credit of the Red Ball Petroleum Products Company, $1,250, and to the credit of West, $718.53. At the time the note was presented it did not have the internal revenue stamps upon it and such stamps to the value of $2 were placed upon said note and cancelled and charged to West. This transaction was on July 9.

On July 27 the defendant Gill and a neighbor drove from Clyde to Wichita, through McPherson and Lindsborg, and at each place inquired for the filling station of the Red Ball Petroleum Products Company and found none. The next day Gill went in to the plaintiff trust company and saw Benson and told him that West had misrepresented to him about the company having filling stations at

Lindsborg and McPherson and that he had been induced to sign the note by fraudulent representations of West and that he was not going to pay it. Before starting to Wichita, Gill had seen his banker at Clyde and arranged for the money to pay the note when due, but on finding there were no filling stations at the towns named, he made up his mind that he had been defrauded and concluded not to pay the note. When the note came due it was not paid, and this suit was brought.

The court instructed the jury that, under the evidence in the case, as a matter of law, the plaintiff was not a holder in due course of the note sued upon. This instruction is assigned as error, and is erroneous. It is said the instruction was given either because the evidence showed that the internal revenue stamps were placed on the note by the trust company at the time it bought it, or that the note was a "myself" note, that is, made payable to the maker and indorsed by him. Neither of these matters rendered the note non-negotiable or irregular on its face. (*Bank v. Dillenbeck*, 111 Kan. 98, 205 Pac. 1022; *Bank v. Birch*, 111 Kan. 283, 207 Pac. 191.) It is argued by appellee that the court might have been justified in giving this instruction by reason of the evidence relating to the manner in which the plaintiff purchased the note, but that was the real controverted question for the jury. (*Bank v. Seaunier*, 104 Kan. 7, 178 Pac. 239; *Beachy v. Jones*, 108 Kan. 236, 195 Pac. 184; *Arnd v. Aylesworth*, 145 Iowa, 185.)

Appellant complains of the following instruction given by the court:

"You are instructed that if W. C. West stated to the plaintiff at the time he signed the letter of July 7, 1920, that it was merely a receipt for the stock and concealed from him the true contents of the letter, such action on the part of the said West is, under the evidence in this case, the act of the plaintiff; and the plaintiff cannot be heard to say that it did not know of the fact that the contents of said letter had been concealed from or misrepresented to the defendant by said West."

Appellee thinks this instruction proper for the reason that when Benson, president of the plaintiff trust company, specified what West would have to furnish him in order for plaintiff to purchase the note, that is, that Benson required defendant's signature to a specific statement, which Benson himself prepared and gave to West and required that West procure the signature of Gill to that statement; that by so doing Benson made West the agent of plaintiff for

the purpose of procuring the signature. We cannot agree with this. West was in possession of a note which he desired to sell. Benson, representing the plaintiff, would buy the note only on condition that it was straight and all right, and as evidence of that, required that West furnish him with a statement signed by Gill himself to that effect, and dictated the kind of a statement which would be satisfactory to him if properly signed by Gill. The situation is the same as though a creditor required specific security on making or renewing a loan and advised the debtor what security would be satisfactory to him. In such a case, even though the creditor prepared the necessary papers and named the persons or property which he would be willing to accept for security, the act of the debtor in obtaining the security is one for his own benefit, and the debtor is not the agent of the creditor in so doing.

In *Galbraith v. Shores-Mueller Co.*, 178 Ky. 688, it was said:

"Where it is necessary for the principal obligor to have his contract guaranteed by others before it becomes binding on the parties, he acts for himself in obtaining the signatures of the guarantors and not as agent of the obligee, and notice to him of the conditional signing by the guarantors is not notice to the obligee." (Syl. ¶ 3.)

In *Wheeler v. Barr et al.*, 7 Ind. App. 381, 386, it was said:

"But conceding that Wheeler had requested Simon to procure Barr as a surety, and Simon, instead of doing so, had forged Barr's name to the note, this would not constitute Simon the agent of Wheeler so as to charge the latter with notice that the signature of Barr was a forged one."

In *Helms et al. v. The Wayne Agricultural Company*, 73 Ind. 325, it was said:

"Where a creditor sends a note either in blank or filled up as to the amount thereof, to his debtor with a request that he get security thereon, the debtor does not thereby become the agent of the creditor for the purpose of securing such security." (Syl. ¶ 2.)

In *Carter v. Goff*, 141 Mass. 123, it was said:

"There was evidence that H. owed the plaintiff, who was financially embarrassed and the plaintiff desired H. to pay the debt or procure a note which he could get discounted and suggested that H. should get the defendant to indorse the note, he having had a note of the defendant before, *held*, that there was no evidence that H. was acting as the plaintiff's agent in procuring the note so as to render admissible the testimony of the defendant as to what H. said when he procured him to indorse the note." (Syl. ¶ 2.)

In *Harris v. Bradley*, 15 Tenn. 310, it was held:

"Where A agrees with B, his debtor, that he will permit his, B's, note to be

renewed provided he procures the indorsement of C, which B accordingly obtained; *held,* that this did not constitute B the agent of A in the transaction, nor is A liable for any fraud practiced by B in obtaining the indorsement of C." (Syl. ¶ 4.)

In *Campbell & Jones v. Murray et al.,* 62 Ga. 86, it was held:

"A debtor is not the agent of his creditor in procuring security, though the creditor designates the very security required, and furnish to the debtor the instruments of writing which he demands to be executed by third persons as a condition precedent to granting indulgence on the debt." (Syl. ¶ 4.)

To the same effect is *Woodward v. Bixby,* 68 N. H. 219, 221.

In his answer the defendant alleged that the plaintiff was the agent of West. That position appears to have been abandoned. In this court, as stated above, it is argued that West was the agent of plaintiff. There is nothing in the evidence to support the claim that either was the agent of the other. The instruction above quoted was improperly given.

The jury returned answers to special questions as follows:

"1. Do you find that the note in question was obtained from the defendant by false and fraudulent representations? Answer. We do. Yes.

"2. If you answer question No. 1 'Yes,' then state fully what such false and fraudulent representations were. Answer. 1st. That no filling stations were in operation as represented. 2nd. That West knew stock was worthless and not paid for as represented. That said corporation had no assets. 3rd. That said corporation was not earning nor paying any dividends.

"3. Did the plaintiff rely materially on the letter, plaintiff's exhibit '2,' in acquiring said note? Answer. Yes.

"4. Did the defendant know the contents of said letter at the time he signed it? Answer. No.

"5. If you answer number four in the negative, then state fully what prevented him from knowing? Answer. That Gill, having absolute confidence in West, signed papers purporting to be a receipt for stock; which is now plaintiff's exhibit '2.'

"6. In acquiring said note did the plaintiff settle therefor by:

"(*a*) Issuing certificates of deposit to the amount of $7,500? Answer. Yes.

"(*b*) By causing to be deposited in the Ranchmens State Bank to the credit of the Red Ball Petroleum company the sum of $1,250? Answer. Yes.

"(*c*) By causing to be deposited in the Ranchmens State Bank to the credit of W. C. West the sum of $718.53? Answer. Yes.

"(*d*) By expending two dollars for revenue stamps? Answer. Yes.

"8. If you answer sections *b* and *c* or either of them of the foregoing questions 'Yes,' then state whether such deposit or deposits were checked out by July 28, 1920. Answer. No."

Plaintiff moved to set aside answers to special questions 2, 4, 5 and 8, as not being supported by the evidence. The court overruled

that motion and appellant complains of the ruling. There was evidence to support the answers to special questions 2, 4 and 5, and the ruling of the court was correct thereon. As to question 8, the answer has no bearing on the decision in this case, and it is not material whether it was stricken out or not. There is no place in this case for the application of section 61 of the negotiable-instruments law. The Ranchmens State Bank is a separate financial institution from the plaintiff. When plaintiff paid for the note in part by issuing its negotiable certificates of deposit, and in part by placing credits in another financial institution, as directed by West, it had parted with its money, and it was no longer material whether those credits had been exhausted, or whether the certificates of deposit were still outstanding. (*Baruch v. Buckley,* 151 N. Y. Supp. 853; *Miller v. Marks,* 46 Utah 257; *Matlock v. Scheuerman,* 51 Ore. 49.) If plaintiff is entitled to recover on this note, such recovery should be for the full amount.

Plaintiff moved for judgment in its favor on findings Nos.' 3 and 6, notwithstanding the general verdict. The motion was overruled, and appellant complains of that ruling. Appellant contends that the defendant was estopped by the letter of July 7 (plaintiff's exhibit No. 2), as against the plaintiff from setting up fraud at the inception of the note or failure of consideration, and especially so in view of the fact that the jury found in answer to special question No. 3, that the plaintiff materially relied upon this letter in purchasing the note. It is well settled that where one has executed a promissory note and thereafter states to one contemplating the purchase of the note that the note is all right, that he has no defenses against it and expects to pay it, he will be thereafter estopped as against the person to whom he made such statements, if that person, relying thereon, purchased the note, from setting up a defense of failure of consideration or fraudulent representations which induced him to execute it. (*McCreary v. Parsons, Executrix,* 31 Kan. 447, 2 Pac. 570; *Easley v. Deer,* 69 Ind. App. 264; *Tapscott v. Gibson,* 129 Ala. 503; *Pearson v. Hardin,* 95 Mich. 360; *Weiss v. Schild Kraut,* 190 N. Y. Supp. 293; *Baxter v. Baxter,* 225 S. W. [Tex.] 204.)

But to make this rule applicable it is essential that the one who executed the note knowingly made such statements. Naturally, if he never made any such statements there would not be an estoppel as to him. If the defendant signed the letter in question, not knowing its true purport at the time, thinking he was signing simply a

receipt for shares of stock delivered to him, and under such circumstances that he would be excused in so doing (*Shook v. Manufacturing Co.,* 75 Kan. 301, 89 Pac. 653, and cases collected, L. R. A. 1917 F, 643), as to him it is the same as though he had made no such representations. Hence, before this letter can be effectual to estop the defendant from pleading fraudulent representations which induced him to execute the note and failure of consideration, it must be shown that he knew at the time he signed the letter, at least, the general purport and purpose thereof. (*Clark v. Coolidge,* 8 Kan. 189.) That plaintiff relied materially upon this letter at the time it purchased the note is a proper matter to consider upon the question of the good faith of plaintiff, but that is the only purpose it has in this case, under findings 3, 4 and 5 of the jury. By the answer to special question 6 the jury found that plaintiff paid value for the note. While a proper matter to be considered on the question, this alone does not constitute one a purchaser in good faith. (*National Bank of Barre v. Foley,* 103 N. Y. Supp. 553.)

In this case it first devolved upon the defendant to prove that the note was procured by the fraud alleged in his answer. If that is established, it then devolves upon the plaintiff to prove that he is a holder in due course (Neg. Inst. Law, § 66), but before the holder of a promissory note received for value and before due can be deprived of the rights of a holder in due course it must be found that he bought it with actual knowledge that the note was procured by fraud or knowledge of such facts that his action in taking the instrument amounted to bad faith. (Neg. Inst. Law, § 63, and *Youle v. Fosha,* 76 Kan. 20, 90 Pac. 1090.) From its nature this is essentially a jury question. (*Beachy v. Jones,* 108 Kan. 236, 195 Pac. 184; *Phillips v. Eldridge,* 221 Mass. 103; *Second Nat. Bank v. Hoffman,* 229 Pa. 429; 233 Pa. 390; *Arnd v. Aylesworth,* 145 Iowa, 185.)

For the reasons herein stated, this cause is reversed for a new trial.