Stalder v. Simpson *et al.*

No. 24,664.

JOHN STALDER, *Appellant,* v. (W. H. SIMPSON, Defendant) S. L.
THOMPSON, Intervener, *Appellee.*

#### SYLLABUS BY THE COURT.

PROMISSORY NOTE — *Obtained from Payee by Fraud — Transferred to Third
Party—Was Note Purchased by Third Party in Good Faith—Verdict Er-
roneously Directed.* Where in an action by the payee to recover the pro-
ceeds of a promissory note, the negotiation of which had been induced by
fraudulent representations, there were circumstances from which the jury
might fairly and reasonably have inferred that the note was not pur-
chased in good faith by the holder, *held,* error to direct a verdict.

Appeal from Morton district court; CHARLES E. VANCE, judge. Opinion
filed December 6, 1924. Reversed.

*G. H. Terrill,* of Elkhart, for the appellant; *A. B. Reeves,* of Dodge City, of
counsel.

*A. L. Maltby,* of Elkhart, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by the payee to recover the
proceeds of a promissory note, the transfer and negotiation of
which had been induced by fraudulent representations.

The plaintiff owned a note for $1,100, executed by one Murray
and secured by chattel mortgage. On May 20, 1920, W. H. Simp-
son and Bern Thompson, both residents of Springfield, Colo., in-
duced the plaintiff to exchange the note and mortgage for stock
in an oil company. Simpson was an oil-stock salesman; Thompson
was a banker. The plaintiff, who resided in Morton county, Kan-
sas, delivered the note to Thompson and received a receipt therefor.
The oil stock was to be delivered later. Simpson and Thompson
then went from Kansas to Stonington, Colo., where the note and
mortgage were sold to the intervener, S. L. Thompson, a brother
of Bern Thompson.

The plaintiff discovered that he had been defrauded of his note.
No oil stock was ever delivered to him. He sought to prevent pay-
ment of the Murray note by filing an action in Morton county
against Simpson. He procured a restraining order preventing Mur-
ray from paying the note; also preventing the register of deeds
from recording any assignment or transfer of the chattel mortgage.
He procured judgment by default against Simpson on September

16, 1920, by publication service. Afterwards Thompson filed an application to open up the judgment and to intervene. His application was granted and in due course the case was tried to a jury, the question being whether he acquired the note in the usual course of business, without notice of any vice in it, and before maturity. At the close of the testimony the court directed a verdict for the intervener, Thompson, and plaintiff appeals.

Two errors are assigned: first, that the court was without jurisdiction to open the judgment and permit Thompson to intervene and set up his defense; second, that the court erred in directing the jury to return a verdict for the intervener.

The first contention of the plaintiff that the court was without jurisdiction to open the judgment and permit Thompson to intervene is without merit. (R. S. 60-2530; *Leslie v. Gibson,* 80 Kan. 504, 103 Pac. 115. See, also, *Martens v. Green,* 113 Kan. 142, 213 Pac. 642.)

As to the directed verdict, the plaintiff contends that the issue was not merely whether Thompson had knowledge of the fraud or his action in buying the note, if he did buy it, was *bona fide,* but, that it also involved the question whether he ever became the owner at all.

It was conceded on the trial that Simpson's title to the note was defective. The burden, therefore, was upon Thompson to prove himself a holder in due course. (R. S. 52-509.) Was the evidence so clear and unequivocal as to leave no difference of opinion concerning it among fair-minded men? We think not. The circumstances attending the transaction had various features which might have caused the jury to discredit the defendant's whole testimony. Among other things he testified: "I purchased the note from a man by the name of Simpson. He, with some other parties, drove up in front of my garage and called me out, I think." (He afterwards admitted, on cross-examination, that his brother was one of the parties and that they were in his brother's car.) "They offered me this $1,100 note, a $100 note and a $100 check. I made an offer on it of twenty per cent discount."

"Q. The check was dated in advance? A. No, it was dated that date. I am under the impression that the party had asked him to hold off for a while.

"Q. Did you know the maker of the check? A. No, I finally closed the deal for the paper. I gave the face of the notes, less twenty per cent. I think the check was at face value. Yes, I believe that was it; twenty per cent off

on the notes and the check at face value. I gave Simpson a check, dated May 20, 1920, for $1,200, I believe. If the note was for $1,100 and the other note $100, it would be $1,200 less twenty per cent. It would be $1,200, less twenty per cent off, and $100 added for the check. . . . Witness identified check for $1,060 signed S. L. Thompson and indorsed by W. H. Simpson as the check given, and the check was introduced in evidence.

"Q. Did Simpson deposit this check and get the money? A. He was not living at Stonington at that time. He was living at Springfield, I think.

"Q. Anyhow you found this check charged against your account in the bank? A. Yes.

"Q. Somebody got the money? A. Yes. I didn't make any inquiry as to how the note was obtained from Stalder by Simpson. I knew Simpson was selling oil stock. I did not know the note had been obtained for oil stock. I might have had an idea. I presumed that an oil man gets notes.

"Q. Was that your presumption at that time? A. I don't remember about the presumption. I would presume now that he did.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. On the date that you purchased this paper did you know that your brother and Simpson had gone somewhere that day and traded for this note? A. I don't remember whether I did or not."

The evidence showed that Bern Thompson was riding around with Simpson, who was selling oil stock; that before the intervener, Thompson, purchased the note from Simpson, Bern Thompson and Simpson attempted to sell it to a bank in Stonington, Colo.; that Simpson deposited the Thompson check in the bank with which Bern Thompson was connected; that the intervener was a stockholder in his brother's (Bern Thompson's) bank. If the opportunity had been given the jury to consider the unresponsive answers of Thompson to some of the questions, his evasion of others, and all the circumstances surrounding the transaction, the jury might, fairly and reasonably, have inferred that the note was not purchased by Thompson in good faith. The question should have been submitted to the jury. (*Beachy v. Jones*, 108 Kan. 236, 195 Pac. 184; *Trust Co. v. Gill*, 113 Kan. 261, 214 Pac. 413. See, also, *Pioneer Trust Co. v. Combs*, ante, p. 89, and authorities cited.)

The judgment is reversed and the cause remanded with directions to grant a new trial.