Reed Foundry and Machine Co. v. McVey.

No. 26,742.

THE REED FOUNDRY AND MACHINE COMPANY, *Appellee,* v.
JAMES O. McVEY, *Appellant.*

### SYLLABUS BY THE COURT.

BILLS AND NOTES—*Holder in Due Course—Knowledge of Fraudulent Represen-
tations—Jury Question.* Whether the holder of a negotiable note, execution
of which was induced by fraudulent representations, became the holder
thereof under such circumstances as to be a holder in due course is, ordi-
narily, a jury question (*Trust Co. v. Gill,* 113 Kan. 261, 214 Pac. 413; *Pioneer
Trust Co. v. Combs,* 117 Kan. 89, 230 Pac. 302), and held that the evidence
in this case justified the application of the rule.

Appeal from Graham district court; CHARLES I. SPARKS, judge. Opinion
filed July 10, 1926. Reversed.

*J. F. Bennett* and *W. E. Mahin,* both of Norton, for the appellant.
*David Ritchie* and *Omer D. Smith,* both of Salina, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on a promissory note
which had been executed in payment for stock in the Savage Har-
vester Company. There were various defenses, general denial, no
consideration, fraudulent misrepresentations, no (blue sky) permit
to sell the stock, etc. The court directed a verdict for plaintiff for
$4,753, and defendant appeals.

The facts were, substantially, these: On February 21, 1921, the
plaintiff entered into a written contract with the Savage Harvester
Company, of Denver, Colo., by the terms of which the Savage com-
pany agreed to purchase certain combined threshing outfits from the
plaintiff, which the plaintiff agreed to manufacture. The Savage
company, in order to secure the performance of the contract, was to
deposit with the plaintiff collateral security amounting to $50,000.
The note in controversy was procured from the defendant and de-
livered to the plaintiff under the terms of the contract, some time in
March, 1921. The question presented by this appeal is whether the
evidence that plaintiff was a holder in due course was so clear and
unequivocal as to leave no difference of opinion among fair-minded
men; *i. e.,* whether the court erred in taking the case from the jury
and directing a verdict.

L. S. Weller testified that he was the manager of the Salina Motor

Bills and Notes, 8 C. J. pp. 1030 n. 82, 1061 n. 61; 3 R. C. L. 1066.

Company; that the Salina Motor Company was the agent of the Savage Harvester Company in the sale of the stock in question; that one O'Shaughnessey was also an agent of the Savage company, stated that the stock was worth $150 a share, and that they had orders for several hundred machines. The defendant testified that at the time of the execution of the note in controversy O'Shaughnessey, a man named Wood, and Weller, represented to him that the Savage Harvester Company had a manufacturing plant in Denver and were manufacturing and selling machines in a number of states, and had been selling them for three or four years, and that the stock was selling for $150 a share, and was worth that amount. He testified that he believed all of these representations and relied upon them, and that he purchased $8,000 worth of stock and gave the note in question, along with other notes and $500 in liberty bonds; that no stock was ever delivered to him, and that he did not learn of the fraud practiced upon him until about the time this suit was filed.

Weller also testified that the Savage company had no manufacturing plant in Denver; that all it had was a small part of a building leased for the purpose of assembling machines. The defendant introduced in evidence the contract between the plaintiff and the Savage company, which shows that the statement that the Savage Harvester Company had a plant in Denver and was manufacturing machines was untrue. The contract disclosed the fact that the Savage company was contracting with the plaintiff for the manufacture of all of its machines.

J. E. Welborn, general manager of the plaintiff company, among other things testified:

"I did not personally examine these notes before receiving them. Mr. E. Clyde Hammond and Attorney A. A. Lee carried on the negotiations. . . . I think there was something said that the notes were to be given for the sale of stock of the Savage Harvester Company, but I did not make an examination relative thereto."

The witness Weller also testified that in a conversation with Hammond, Hammond stated that "the Reed Foundry people were a bunch of chumps for getting mixed up with the Savage company and that they had gone into the deal against his protests"; that "the Savage company was at the time they went into the contract practically defunct, and that they had taken a bunch of stock notes to guarantee the performance of that contract."

The great bulk of defendant's evidence was excluded by the court

for one reason or another. For instance, the defendant offered in evidence eight letters written by the plaintiff to the Savage company which leave at least a fair inference that the plaintiff was familiar with the Savage company's dealings in these matters. One of the letters, written before plaintiff received the note in controversy, said:

"In the second place, we are not going to put any more money into the proposition than we have invested so far until you show us that the $50,000 security you propose to give is acceptable. We learn through Mr. Hammond that the notes you hold, given for stock, are considered , . . worthless. This is probably not because the makers are not responsible, but due to the laws of your state. In other words, if the makers of these notes repudiate payment your courts will uphold them and there is no way for us to recover."

In another, plaintiff said:

"It would appear, however, from the information we get and from what Mr. Hammond has wired us (we have had no letter from him as yet), that the Savage Harvester Company affairs are very badly involved to say the least, and at this long distance we are of the opinion that everything has not been handled in a manner which would tend to increase our confidence in your organization."

In still another, plaintiff said:

"We are asking Mr. Hammond to investigate the rumor that you have failed to comply with the 'blue-sky laws' and also the security you propose to furnish. We know that you will give him every assistance and make the task as short as possible so we may be at liberty to proceed with the manufacture of tractor and harvester."

Testimony that the secretary-treasurer of the Savage company (later) informed the defendant that it never had any manufacturing plant in Denver, was stricken out, as was also evidence that the company had never sold any machines, that it did not have consent to sell stock in Kansas at the time defendant's notes were taken. The defendant offered also to show that in 1923 he made a complete investigation of the assets of the Savage company during the year 1920 and was familiar with the actual value of its stock at the time the Savage company procured his note; also to show that he contracted for a harvester and tractor and gave his note for $2,500 for the same; that although the machine was never delivered to him, his note was sold by the company. These offers were made upon the theory that he had an opinion as to the value of the Savage company's stock, and offered to show its value. The offers were refused. He testified that he examined the records in the "blue-sky" department of the bank commissioner's office of the state of Kansas

and that there was no record in that office showing that the Savage company had a permit to sell its stock at the time of the execution of the note. This evidence was stricken out by the court.

In support of a motion for a new trial the defendant filed an affidavit alleging that after the action was filed and before trial he made at least ten trips from his home in Hill City to Denver for the purpose of obtaining evidence in this action, and that on each trip he attempted to learn the whereabouts of O'Shaughnessey, former agent of the Savage company, and Curtis Baldwin, president of the company; that he was not able to locate them until after the trial. He offered Baldwin's affidavit which, among other things, recited that no stock was ever delivered to the defendant for his note; that he (Baldwin) turned over to A. A. Lee, representing the plaintiff, the note of the defendant, together with others; that before accepting the notes Lee made a careful investigation of each of them and was informed that the defendant had never received his stock for such note. He also informed Lee of all other facts respecting the stock sale transaction. Defendant offered also an affidavit of Elson H. Whitney, a lawyer of Denver, to the effect that he had been attorney for the Savage company and that, among other things, he had called upon A. A. Lee, representing the plaintiff, upon several occasions, and on more than one occasion had discussed with Lee the nature of the securities deposited with the plaintiff, and that Lee was fully informed relative to the notes and securities and consideration therefor, and that no stock of the Savage company had, up to that time, been delivered to the makers of such notes. There were other matters set out in the affidavits of more or less materiality. We are of opinion the showing of the defendant of diligence was sufficient and that there were allegations of newly discovered evidence which, under all the circumstances, would have warranted the trial court in granting a new trial. We are also of opinion that the court should have shown greater latitude in the introduction of evidence.

"On the trial of a civil action in which the claim for release is based upon allegations of fraud great latitude should be given in the introduction of evidence tending to disclose the alleged fraud." (*Brakefield v. Shelton*, 76 Kan. 451, Syl. ¶ 3, 92 Pac. 709.)

The letters which were offered by the defendant, together with the testimony of Weller, Welborn and the defendant, were sufficient to show that the plaintiff was familiar with the dealings of the

Reed Foundry and Machine Co. v. McVey.

Savage company to such an extent that its good faith in accepting the defendant's note might well be questioned. There is a controversy between the parties as to whether or not the defendant, on the hearing of the motion for a new trial, reoffered in evidence the rejected letters and the evidence that had been stricken out. The defendant asserts that all such evidence was again offered. The plaintiff claims it was not.

We think it can make no difference.

"It is entirely proper and good practice for an attorney to apprise the court of what he hopes or expects to prove by a witness (*Eagon v. Eagon,* 60 Kan. 697, 57 Pac. 942), and where the rejected evidence is documentary and is preserved the supreme court can examine it and its formal reoffering in support of the motion for a new trial may be ignored (*Bank v. Seaunier,* 104 Kan. 7, 8, 178 Pac. 239; *Bellport v. Harkins,* 107 Kan. 454, 192 Pac. 730); also, where the testimony of a witness has been introduced or partially introduced and is then excluded, it is unnecessary to reproduce it on the hearing of the motion for a new trial, since the trial court knows what the evidence is and the supreme court can gather its substance." (*Leach v. Urschel,* 112 Kan. 629, 635, 212 Pac. 111.)

We are of opinion that the evidence to which attention has been called should not have been stricken out, and that the letters should have been admitted. In *Pioneer Trust Co. v. Combs,* 117 Kan. 89, 90, 230 Pac. 302, it was said, in the opinion:

"Where because of fraud in the inception of a note the plaintiff has the burden of proving that he is a holder in due course the question whether he has met the requirement is ordinarily one for the jury. (*Trust Co. v. Gill,* 113 Kan. 261, 270, 214 Pac. 413.) There is, however, an exception to this general rule, recognized by this and many other courts, which has been thus expressed: 'unless that evidence is so clear and unequivocal as to leave no room for difference of opinion concerning it among fair-minded men.' (*Beachy v. Jones,* 108 Kan. 236, 195 Pac. 184.)"

The instant case, in our opinion, does not fall within the exception. The evidence was sufficient to take the case to the jury.

In *Beachy v. Jones,* 108 Kan. 236, 241, 195 Pac. 184, the court, in applying the law to the evidence, said:

"Be that as it may, the question whether Beachy was a holder in good faith was clearly a question for the jury, under section 66 of the negotiable-instruments act. In *Phillips v. Eldridge,* 221 Mass. 103, the court said: 'There was evidence that the note here in suit was procured by duress practiced by the payee on the makers. If that evidence was believed, the plaintiff to recover had the burden of proving that he was a holder in due course as defined in R. L., c. 73, § 69. The plaintiff and the payee, when called as adverse wit-

30—121 Kan.

nesses by the defendants, testified to facts which would have warranted a find-
ing that the plaintiff was a holder in due course. But the jury were not
bound to believe their testimony, although uncontradicted, and therefore a
verdict for the plaintiff could not have been directed as a matter of law.
When testimony warranting a finding that the plaintiff was a holder in due
course of a note originating in fraud is given by witnesses called by the plain-
tiff, it is settled that a verdict cannot be directed for the plaintiff as matter
of law. (p. 104.)'

"In *Arnd v. Aylesworth*, 145 Ia. 185, on a similar question, it was said:
'And to justify the court in directing a verdict in her favor the testimony of
the *bona fide* character of her holding must not only be without substantial
evidence tending to impeach it, but the showing in its support must be so
clear and unequivocal as to leave no room for difference of opinion concern-
ing it among fair-minded men.' (p. 188.)

"In *Bank v. Fountain*, 148 N. C. 590, the rule was thus stated: 'When it has
been established or there is allegation and evidence tending to show that a
negotiable instrument was procured by fraud, in a suit by one claiming to be
the holder in due course, it was error for the trial judge, upon supporting evi-
dence, to charge the jury that the *prima facie* case of the plaintiff was re-
stored by his uncontradicted testimony; that he acquired the note in the usual
course of business, before maturity and without notice of any vice in it, as the
burden of proof thereof was upon plaintiff, and the question as to the issue
and the credibility of the evidence thereon was one for the jury.' (Syl. 2.)" See,
also, *Trust Co. v. Gill*, 113 Kan. 261, 214 Pac. 413; *Standard Investment Co.
v. Gill*, ante, p. 421; and see, also, *Rowan v. Rosenthal*, 113 Kan. 604, 215 Pac.
1008; *Prewitt v. Sholl*, 120 Kan. 158, 242 Pac. 149.

The judgment is reversed and the cause remanded, with instruc-
tions to grant a new trial.

BURCH, J., dissenting.