No. 30,290.

THE FIRST NATIONAL BANK OF BELOIT, *Appellee,* v. LOUIS E. KALLASH, *Appellant.*

(9 P. 2d 670.)

Opinion filed April 9, 1932.

*A. Teeple* and *George E. Teeple,* both of Mankato, for the appellant.

*R. L. Hamilton* and *Leon W. Lundblade,* both of Beloit, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case involves the right of a holder in due course of a note with mortgage securing it, executed by a person of unsound mind, to recover thereon.

The petition was in the usual form of one in a mortgage-foreclosure action. The defendant by his brother, as his next friend,

filed an answer admitting the signing of the note and mortgage, but denying all other allegations of the petition, and alleging specially the incompetency of the defendant although not so adjudged, the want of consideration for the note and mortgage, for their indorsement and assignment to the plaintiff, and the knowledge of the plaintiff of want of consideration for the execution of the same, and at great length and in detail alleging fraud, duress and false and misleading representations made by payee to procure defendant to execute these papers. The reply was a general denial and specific denials of any fraud or duress and of any knowledge or notice of any defect in the paper prior to or at the time of the purchase thereof.

The burden of proof was by the court placed on the defendant and the issues of fact were tried to a jury which returned a verdict for plaintiff and answered the following special questions:

"1. Did the plaintiff purchase the note in question in this suit? A. Yes.

"2. If you answer question No. 1 'yes,' when did it purchase the note? A. On about January 30, 1929.

"3. If you answer question No. 1 'yes,' then did plaintiff have any knowledge of any defect in the note at the time of purchase? A. No.

"4. If you answer question No. 3 'yes,' then state the acts or facts constituting such notice or knowledge. A. ——.

"5. Is the defendant, Louis E. Kallash, of unsound mind at this time? A. Yes.

"6. Was Louis E. Kallash of unsound mind at the time he signed and delivered the note in question? A. Yes."

The court approved the verdict and rendered judgment for plaintiff, from which defendant appeals.

The verdict and answers to special questions fully dispose of all questions of fact, there being no contention that there was insufficient evidence to support any of the answers, and the verdict contains in it all the necessary elements to support it which may not be specifically covered by the answers.

The question involved is purely one of law under our negotiable-instruments act (R. S. 52-501 to 52-509). Appellant states the questions involved as follows:

"1. Is incapacity to make a promissory note by reason of the mental incompetency of the maker a good defense against the note in the hands of a holder in due course (a) where the consideration therefor is absent or unfair; (b) or where the party dealing with the incompetent person has actual notice of the mental condition of the maker?

"2. Must one seeking to recover upon a note of an incompetent person, although a holder in due course, prove that the payee acted fairly, without notice of the incompetency of the maker, and render value therefor?"

These questions are both answered in the negative by the first paragraph of the syllabus in the case of *Bank v. McLaren,* 112 Kan. 538, 211 Pac. 633, which is as follows:

"A bank agreed to make a loan to a borrower upon his giving a mortgage upon his land, after he had procured a conveyance to himself of a life estate owned by a sister, to which his title was subject. The borrower fraudulently induced his sister, who was mentally incapable to transact business, but had not been so adjudged, to convey her interest to him, and afterwards the borrower executed a mortgage to the bank, which paid the full amount of the loan. *Held,* that the bank obtained a valid lien unless it knew of the incapacity of the sister to convey or of the fraud of the borrower in obtaining the conveyance, or had any knowledge of such facts and circumstances as made it chargeable with notice of such incapacity and fraud." (Syl. ¶ 1.)

Counsel for appellant does not distinguish between the McLaren case and the one at bar, but cites decisions from other states to support the contention of the appellant. The facts and circumstances in the case at bar are much stronger than those in the McLaren case. In this case the defendant was apprehensive of being indicted by the federal grand jury for violation of the prohibitory liquor law and secured the professional services of an attorney to prevent it, if possible, because of having served a sentence for such violation under the state law. He was not indicted and a satisfactory fee was paid for such services. Shortly thereafter he received a notice of liability for taxes and penalties as a manufacturer, for having maintained a still, and other similar taxes and penalties, in the sum of $3,326.67 from Mr. Wark, commissioner of prohibition. He again sought the services of the same attorney, who advised him he should make a cash offer by way of compromise and thus save as much of tax and penalty as possible. He had no money available but thought he could borrow it on one of his farms in sixty days, which would be too late for this emergency. The sum of $2,000 was thought sufficient for compromise and attorney fee, and he gave the attorney his note for that sum and secured it by mortgage on 320 acres of land in Smith county. The attorney sold the note and mortgage to the First National Bank of Beloit, plaintiff in this action, at par, receiving the full face value of it, and proceeded to effect a compromise of the taxes and penalties for $500.

By the terms of the agreement, the attorney was to receive one-half of the amount he saved the defendant, and he paid the bank the balance, which was applied on the note.

Evidence was introduced attempting to show that the attorney knew or could reasonably have known the condition of the defendant's mind and his incapacity to transact such business, and as to duress, fraud and misrepresentations. This was contradicted by the evidence of the attorney and others familiar with the transactions between the defendant and the attorney. There was no finding of the jury on this question of fact, and it is not necessary if the rule in the McLaren case controls. In that case the brother knew of the incompetency of his sister, from whom he obtained a deed in order to perfect his own title so he could procure a loan. In that case it was said on this subject in the opinion that—

"The deed in question may have been void as to George and only voidable as to the bank. He paid no consideration for the conveyance, but the bank paid full consideration for its mortgage. If it took the mortgage in good faith, having paid full consideration and without notice of the fraud of George in obtaining the deed to the property on which the mortgage was given, it would be in the attitude of an innocent purchaser from a grantee who had fraudulently obtained the conveyance." (p. 540.)

In the McLaren case there were other features bringing the bank more nearly in touch with the transaction between the brother and his incompetent sister. The bank officers prepared the deed, putting therein one dollar as consideration, knowing at the time that her life interest was valued at about $500 per year and that the brother, doing his banking business with that bank, had no funds or property with which to compensate her.

Appellant's theory is that even though the plaintiff bank may have purchased the note from the payee before maturity in good faith for a valuable consideration and without knowledge or notice of any infirmity therein or incapacity of the maker, yet when the defense of incompetency is interposed the burden is upon the plaintiff to prove that the party dealing with the incompetent person acted fairly and was without notice of his incapacity, citing among other authorities the following: *Hosler v. Beard et al.*, 54 Ohio St. 398; *Wadford v. Gillette*, 193 N. C. 413, 137 S. E. 314; *White v. Holland*, 229 S. W. (Tex. Civ. App.) 611; and *John P. Bleeg Co. v. Peterson*, 51 S. D. 502, 215 N. W. 529.

The decision in the Ohio case can very properly be said to declare

a rule to that effect, but the case was not decided upon that ground. It was tried upon an agreed statement of facts to the effect that the maker of the note was incompetent when the note was signed and that the payee was intimately acquainted with the maker long before the execution of the note and was legally chargeable with knowledge of his mental condition. The note had been sold and transferred to the plaintiff for a valuable consideration before maturity. In the trial when the defendant introduced the agreed statement of facts and rested, the plaintiff introduced no proof whatever and the court held such mental incapacity is *prima facie* a complete defense and places the burden upon the plaintiff to make the proof necessary to overcome such defense and entitle him to recover. The negotiable-instruments law had not been adopted in Ohio at the time this decision was made, and the opinion mentions the fact that the decision is based upon the law merchant.

The Gillette case was instituted by the guardian of the incompetent person to cancel a note and trust deed given by her, making the payee and the indorsee parties defendant, and both seem to have shown their complete want of knowledge or notice of the incompetency of the maker thereof. Because these facts were established, it was held the holder in due course should recover, but we find no definite requirement in the opinion that before such holder could recover he must prove fair dealing by the payee and the payee's want of notice of incompetency.

In the Holland case the controversy was between the original parties to the transaction although the note and trust deed given by the incompetent was to pay or secure a debt of her husband, and it was there held that—

"Payee, accepting note to secure husband's debt and deed of trust on wife's land to secure note without knowledge that wife at time of execution of deed of trust was insane, was not protected as an innocent purchaser." (Syl. ¶ 4.)

The Peterson case is not helpful because the incompetent person there had been so adjudged and a guardian appointed for him before he assigned the note, and it was held that a subsequent indorsee was not a holder in due course.

We are not persuaded by these or other authorities that it is incumbent under our negotiable-instruments act upon a holder in due course to establish the fair dealing of the payee and his lack of knowledge of incapacity of the maker of the note in order to recover

thereon. The ruling in the McLaren case, supra, has never been reversed or modified in this jurisdiction and a number of subsequent decisions support and sustain the same adherence to the rights of a holder in due course under the negotiable-instruments law.

"Where, in an action brought on a negotiable note by a bank or similar institution as indorsee, fraud in its inception is established and the burden is thereby cast upon the plaintiff to prove itself a holder in due course, a peremptory instruction for a verdict in its favor is proper where depositions of its officers, supported so far as possible by entries on its books, show a purchase for value before maturity without notice of the fraud, and the evidence is unimpeached and uncontradicted and not intrinsically improbable, and there are no circumstances from which bad faith may be reasonably inferred. . . ." (*Pioneer Trust Co. v. Combs,* 117 Kan. 89, syl., 230 Pac. 302.)

Where a draft was accepted, assigned and transferred before maturity for value to an innocent holder, it was held:

"Such an instrument imports a consideration, and fraudulent representations of the drawer in procuring it is no defense as against a holder in due course who acquired it without notice of the fraud." (*State Bank v. Harford Bros.,* 116 Kan. 262, syl. ¶ 2, 226 Pac. 750. See, also, *Trust Co. v. Gill,* 113 Kan. 261, 214 Pac. 413; *Farnsworth v. Burdick,* 94 Kan. 749, 147 Pac. 863; and *Bank v. Birch,* 111 Kan. 283, 207 Pac. 191.)

Appellant contends that it was error for the trial court to place upon defendant the burden of proving that the attorney did not act fairly with defendant. That was one of the allegations of the answer and a proper defense. However, the court only included this defense with others made by the defendant and instructed the jury that if the defendant proved one or more of these defenses, then it would be necessary for the plaintiff to show that it was a *bona fide* holder for value before maturity. This we think is the correct rule, and the jury did find that the defendant established one at least of his several defenses, viz., unsound mind, and the plaintiff then, under the instruction, had the necessity of establishing the fact of its being a holder in due course.

The other instructions considered and we find no error in them. The judgment is affirmed.

HARVEY, J., concurs in the order affirming the judgment.