No. 25,467.

THE PIONEER TRUST COMPANY, *Appellant,* v. M. C. COMBS, *Appellee.*

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Action by Indorsee—Fraud in Inception of Note—Burden of Proof.* Where, in an action brought on a negotiable note by a bank or similar institution as indorsee, fraud in its inception is established and the burden is thereby cast upon the plaintiff to prove itself a holder in due course, a peremptory instruction for a verdict in its favor is proper where depositions of its officers, supported so far as possible by entries on its books, show a purchase for value before maturity without notice of the fraud, and the evidence is unimpeached and uncontradicted and not intrinsically improbable, and there are no circumstances from which bad faith may be reasonably inferred. And it is held that such situation is presented in this case.

Appeal from Morton district court; CHARLES E. VANCE, judge. Opinion filed November 8, 1924. Reversed.

*G. W. Sawyer, John C. King,* both of Liberal, *H. M. Langworthy, Byron Spencer,* and *Frank H. Terrell,* all of Kansas City, Mo., for the appellant.

*William Easton Hutchison, C. R. Hope, A. M. Fleming,* all of Garden City, *L. A. Madison,* of Dodge City, and *G. Porter Craddock* of Richfield, for the appellee.

The opinion of the court was delivered by

MASON, J.: On May 5, 1921, M. C. Combs, of Richfield, Kan., executed four "myself" notes for $500 each, payable to his own order, and due in six months, indorsing them in blank and delivering them to B. R. Beezely and H. L. Hawkins. This action was brought against Combs on such notes by the Pioneer Trust Company, of Kansas City, Mo., claiming to be a holder in due course through purchase from E. E. Amick, by whom they were indorsed. The defendant pleaded that his execution of the notes was procured by false representations and that the plaintiff was not a holder in due course, but acquired the notes with knowledge of the fraud. Judgment was rendered in favor of the defendant and the plaintiff appeals.

The plaintiff contends that the evidence did not justify a finding that it was not a holder in due course. The defendant testified that the notes were given for stock in the A. J. Stephens Rubber Company, at the rate of $30 a share, Beezely and Hawkins representing that to be its market price and telling him it was paying from 16 to 35 per cent dividends. Evidence was presented that these repre-

sentations were untrue, justifying a finding that the notes were obtained by fraud and the title of Beezely and Hawkins was defective, so that the *prima facie* presumption of the plaintiff being a holder in due course was overthrown and the burden was cast upon it to prove that fact. (R. S. 52-505, 52-509.) The notice of the fraud required to prevent a plaintiff from being a holder in due course must be actual knowledge, or knowledge of such facts that his action in taking the notes amounts to bad faith. (R. S. 52-506.) Mere knowledge of suspicious circumstances, or of such facts as would excite the suspicion of a reasonably prudent person, is not enough (*Youle v. Fosha*, 76 Kan. 20, 90 Pac. 1090; *Bank v. Reid*, 86 Kan. 245, 120 Pac. 339; *Gigoux v. Moore*, 105 Kan. 361, 184 Pac. 637), although they may be such evidence of bad faith as to take a case to a jury. (3 R. C. L. 1075.)

To meet the burden of showing that it was a holder in due course the plaintiff introduced the depositions of its vice president, who had acted for it in acquiring the notes, and of its discount teller, who made the entries in the loan register concerning them, together with the entries themselves. They showed that the plaintiff, without knowing for what the notes were given, purchased them from E. E. Amick on May 14, 1921, for $2,000, of which $1,600 was credited on another note of his for $7,000 held by the plaintiff, the balance being paid by check.

Where because of fraud in the inception of a note the plaintiff has the burden of proving that he is a holder in due course, the question whether he has met the requirement is ordinarily one for the jury. (*Trust Co. v. Gill*, 113 Kan. 261, 270, 214 Pac. 413.) There is, however, an exception to this general rule, recognized by this and many other courts, which has been thus expressed: "unless that evidence is so clear and unequivocal as to leave no room for difference of opinion among fair-minded men." (*Beachy v. Jones*, 108 Kan. 236, 195, Pac. 184.) That situation arises where the plaintiff accounts for his good-faith ownership by evidence which is not intrinsically improbable, and is not contradicted or impeached by, or inconsistent with, other evidence or inferences fairly to be drawn therefrom. (8 C. J. 1063, text to note 72; *Delaney v. Brownwood*, 73 Colo. 83; *City Nat'l Bank of Auburn v. Mason*, 192 Iowa 1048; *Smith v. Breeding*, 196 Iowa 670; *First Nat'l Bank of Montour v. Brown*, 199 N. W. 272 [Iowa]; *Barnard v. Napier*, 167 Ky. 824; *Edelen v. First Nat'l Bank*, 139 Md. 413; *Trust Co. v. Wachman*, 221 Mich. 512; *First Nat'l Bank v. Klimenhagen*, 199 N. W. 91

Pioneer Trust Co. v. Combs.

[Minn.]; *Goedhard v. Folstad,* 156 Minn. 453; *Downs v. Horton,* 287 Mo. 414; *City Nat'l Bank v. Jones,* 109 Neb. 724; *Howard Nat'l Bank v. Wilson & Trustee,* 96 Vt. 438; *Fisk Rubber Co. v. Pinkey,* 100 Wash. 220; *First Nat'l Bank of Ritzville v. Gunning,* 127 Wash. 307; *First Nat'l Bank of Ritzville v. Egbers,* 226 Pac. 492 [Wash.].)

It was said in an early case, where a directed verdict for the holder of a negotiable note was upheld:

"The defendant urges that the burden of proving the plaintiff bought the note in good faith was upon him. It is immaterial where the burden of proof belongs as an abstract matter of law, when all the evidence of the transaction has been introduced, and it establishes that the note was purchased in good faith, and without notice of any facts that would have led the plaintiff to a knowledge of the consideration of the note." (*McCormick v. Holmes,* 41 Kan. 265, 267, 21 Pac. 108.)

And more recently, the character of the issue where fraud in the inception of a note has been established and the circumstances of its acquisition by the plaintiff have been shown by undisputed testimony:

"There is no contention, and under evidence properly admitted and not disputed there could be no serious contention, that the plaintiff knew of the fraud in procuring and negotiating the note, or was otherwise guilty of bad faith. The facts upon which the defendant relied as establishing bad faith were not sufficient for the purpose." (*Gigoux v. Moore,* 105 Kan. 361, 368.)

A holder's acquisition of a note without notice of fraud in its inception is established where, after finding that he took it with such notice, the jury, in answering a question requiring them to state of what the notice consisted, mention only matters which do not warrant an inference of bad faith. (*Bank v. Dillenbeck,* 111 Kan. 98, 205 Pac. 1022.)

The burden of proving himself a holder in due course, which is cast upon the plaintiff when fraud in the inception of the note on which he sues is shown, is sometimes treated as what is called the burden of evidence, or a mere shifting of the order of proof. (See Brannan's Negotiable Instruments Law, 3d ed., § 59, p. 217; 8 C. J. 988; 3 R. C. L. 1039.) We are proceeding on the theory, however, that if fraud is established the actual burden of proof upon the issue of good faith rests upon the plaintiff. In meeting that burden he is required to show the circumstances under which he took the paper, and his case is not made by merely showing a purchase for value before maturity. (*Consolidated Motors Co. v. Urschel,* 115 Kan. 147, 222 Pac. 745; see, also, 3 R. C. L. 1039.)

The evidence in behalf of the plaintiff having been given by deposition, there is no room to suppose—assuming such supposition otherwise to be tenable—that from something in the appearance and manner of the witnesses the jury discredited their statements. There was nothing intrinsically improbable in the testimony, which described an ordinary business transaction. The plaintiff consequently met the burden of proving it was a holder in due course, and judgment should have been rendered in its favor, unless the facts as developed by the evidence tended to show (and therefore warranted a finding) that it took the notes with actual knowledge of the fraud or with knowledge of such facts that its action in taking them amounted to bad faith. The question to be determined is whether that condition exists here. The defendant urges various specific grounds upon which he contends a finding that the plaintiff was not a holder in due course may be justified. We do not regard them, singly or collectively, as tending to establish that fact. Each will be briefly mentioned.

That the notes were paid for in part by indorsing a credit upon a note of Amick's for a larger sum does not affect the matter. (8 C. J. 494; Brannan's Negotiable Instruments Law, 3d ed., § 25, p. 102.)

The plaintiff's evidence showed these facts: It bought the notes without any inquiry as to the financial standing of the defendant (although Amick said something about his being a large landowner and perfectly good), taking them in reliance wholly upon the indorsement of Amick (the vice president of a Kansas City bank) and not upon the solvency of the defendant. In the loan register Amick's name was entered under the column marked "maker" and the defendant's under "indorser," the purpose being to have the liability shown on Amick's account. The plaintiff called upon Amick once or twice to make good the amount of the notes, and he said he would pay it whenever he had to, but wanted to collect it out of the defendant if he could. The plaintiff was trying to collect it from the defendant, expecting Amick to pay if it should not succeed in doing so.

The facts that the plaintiff bought the note in reliance upon the financial standing of Amick and not upon that of the defendant, and that it elects to collect it from the defendant, does not affect its standing as a holder in due course. The right of an innocent purchaser to look to the maker of a note who has a good defense

Pioneer Trust Co. v. Combs.

against the original holder is not based upon the principle of equitable estoppel to such an extent that he must show he parted with value in reliance upon the maker's responsibility. The quality of negotiability is given to the instruments which possess it, notwithstanding that inequitable results sometimes follow, because public policy is thought upon the whole to be best served by promoting their currency. One who acquires them under the conditions which make him a holder in due course may use his pleasure as to which of those legally liable he shall pursue.

The stock purchased by the defendant had formerly stood in the name of Amick, and the evidence warranted the inference that the persons who sold it to him were acting for Amick. The notes were sold to the plaintiff on the day the stock was transferred on the books of the corporation from Amick to the defendant. In behalf of the defendant it is argued that the plaintiff acquired the notes on the day Amick received them, and that collusion may be inferred from that fact and from the circumstance that Amick was a stockholder in the plaintiff company. We do not think that inference justifiable.

Amick was in Kansas City on the day the depositions were taken in behalf of the plaintiff and he was not produced as a witness then or at the trial, and it is suggested that this was in a way the suppression or withholding of evidence. The plaintiff was not asserting any right upon the theory of Amick himself having been a holder in due course, and was under no obligation to make him its witness. The situation is quite different from those presented in *Ireland v. Shore,* 91 Kan. 326, 137 Pac. 926, where a witness refused to produce an important paper within his control, and in *Security Co. v. Low,* 112 Kan. 153, 210 Pac. 190, where correspondence bearing on the controversy was missing from the plaintiff's files.

The jury in response to special questions found that the plaintiff had paid nothing for the notes, that it had actual knowledge that they were procured by fraud, and acquired the knowledge from Amick. We think the findings and general verdict are without support in the evidence.

The judgment is reversed with directions to enter judgment for the plaintiff.

Harvey, J., dissents.