No. 28,814.

A. L. HOUGHTON, *Appellee,* v. THE SABINE LUMBER COMPANY, *Appellant.*

(278 Pac. 758.)

Opinion filed July 6, 1929.

*Louis R. Gates,* of Kansas City, for the appellant.

*Blake A. Williamson,* of Kansas City, *John A. Davis* and *Nelson Davis,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action between two lumber companies growing out of the sale by one and purchase by the other of lumber and the shipment of one car of it which the purchaser had sold to a third lumber company, which had sold it to a manufacturing company. The action was initiated by A. L. Houghton filing in the city court at Kansas City a bill of particulars which alleged, in substance, that about January 20, 1926, plaintiff purchased from defendant, the Sabine Lumber Company, certain lumber which defendant agreed to supply of certain grade and lengths; that the contract was fully performed by plaintiff, but that defendant failed and refused to perform the contract on its part, and that by reason thereof plaintiff had been damaged in the sum of $220.92. How plaintiff determined this figure is shown by a statement attached to the bill of particulars, in which plaintiff charges himself with the invoice of the car of lumber, $834.98, and takes credit for cash payment on contract, $382.50; allowance for overshipment of three-foot stock, $98.38, unloading charge, $60; storage, $25; allowance for off-grade per inspection report, $76.46; demurrage and switching charge, $93; freight, $218.97; interest, $8.95; arbitration fee, $17.64; profit, $1 per thousand for 75,000, $75; making total credits claimed of $1,055.90, which, less the invoice, left a balance claimed to be due of $220.92. It seems that the claim for the arbitration fee was later abandoned, leaving the net balance claimed due of $202.28.

Defendant filed an answer which contained a general denial, but admitted that it had sold lumber to plaintiff and shipped the one car in question; and further, and by a cross petition, averred that there had been an overshipment of 269 feet of lumber, which would change the original invoice to $859.73. Credit was given for the cash paid, $382.50; freight, $218.97; allowance on overshipment of three-foot material, $92.75; allowance for off-grade per inspection report, $74.44; making total credits of $768.66, leaving a balance which defendant claimed to be due it on account of $91.07. These pleadings put in issue the damages claimed by plaintiff for demurrage, storage, unloading and loss of profit. In the city court there was judgment for plaintiff. Defendant appealed to the district court, where there was a trial *de novo* to a jury, which answered special questions and returned a general verdict for plaintiff for $203.28. The defendant has appealed.

The business between plaintiff and defendant was conducted by correspondence. Only two witnesses were called to testify at the trial—the plaintiff in his own behalf and one witness for defendant. Their testimony was confined in the main to the identification of correspondence and the general matters relating to the business of the parties. There is therefore no substantial controversy as to the facts, the material portions of which may be thus stated: Plaintiff is, and for many years has been, engaged in the lumber business under the name of A. L. Houghton & Co., with his office at Kansas City, Mo. Defendant appears to be a manufacturer of lumber, having its office in St. Louis, Mo., and having mills at several points in the lumber district of Texas. It appears that J. L. Porter, doing business as the J. L. Porter Lumber Company, with an office in the same building with plaintiff at Kansas City, was a sales agent for defendant. At any rate, sometime in January, 1926, Porter went to plaintiff's office and stated that defendant had for sale certain grades and quantities of lumber, among which was a quantity of short leaf yellow pine finish, kiln dried, of the quality of B&Better, priced at $37 per thousand delivered. Plaintiff then sent out a letter offering lumber of this kind and quality for sale. In response to one of these letters he received an order from the Edward Eiler Lumber Company, Pittsburgh, Pa., to be shipped to Erie, Pa., for—

"Short leaf yellow pine finish K. D. Approximately, 75,000 ft. 1 x 6-3'0 B&Btr S4S ¾ x 5¼. 3'6" ditto. And 4' ditto. Price, $38.00 per thousand. Principally 4-foot bundled. Not over ten per cent 3 ft. Less freight. Per your acceptance wire. Must be bright stock, well manufactured."

Plaintiff wired the Eiler Lumber Company accepting the order, and two days later, through the J. L. Porter Lumber Company, placed with defendant an order for this same lumber at $37 per thousand. Defendant acknowledged this order by its letter to plaintiff of February 8, 1926, as follows:

"We have your order given to us through the J. L. Porter Lumber Company, which we take pleasure in entering per acknowledgment herewith. Kindly check over the inclosed acknowledgment and advise immediately if not in accordance with your understanding."

Pertinent extracts from the acknowledgment are as follows:

"Notice: Our lumber is sold on the basis of grading rules and specifications of the Southern Pine Association, and in the event of a claim will be subject to its official inspection. . . . Approximately: 75,000'—1 x 6—3'—3'6"— 4' B&B S4S K. D. to ¾ x 5-¼". $37.00. Not to exceed 10 per cent 3' Ship one car as quickly as possible. Hold second car until report on first car. The

third car to be shipped when accumulated. Amount may vary not to exceed 10 per cent. Terms: Cash advance of 20 per cent on net f. o. b. mill value. . . . Shipment will be made in accordance with this copy and, unless advised immediately of any error or discrepancy, this will constitute contract between us. . . ."

In compliance with the terms of this acknowledgment defendant sent plaintiff his check for $382.50 for the cash advanced. Plaintiff did not advise defendant of any error or discrepancy in this acknowledgment. It is conceded that this order required three cars for shipment. The first car was loaded and shipped about March 5, 1926. Defendant sent plaintiff an invoice of the car, which disclosed that it contained 6,729 feet of three-foot lengths. Plaintiff advised the Edward Eiler Lumber Company of the quantity and kinds of lumber in the cars, which company immediately complained that more than ten per cent of the three-foot lengths was loaded in one car. Plaintiff replied that the other cars would go forward with so little three-foot lumber that the entire quantity of that length would not exceed ten per cent of the amount sold. This was not satisfactory to the Edward Eiler Lumber Company. There was much correspondence between plaintiff and that company and also between plaintiff and defendant, with the final result that the Edward Eiler Lumber Company agreed to accept the three-foot-length lumber in that car at $18 per thousand and cancel the balance of the order. Plaintiff communicated this proposition to defendant and asked defendant to accede to it, which the defendant did. This concession removed that controversy and ended the contract as between defendant and plaintiff as to the balance of the original order. We therefore pass that question without giving it further attention more than to say that under the contract between the parties there seems to be no sound basis for the objection made by the Edward Eiler Lumber Company and the requested concession which plaintiff asked defendant to make, and which it did make; that is to say, the contract appears to be for the entire approximate 75,000 feet which had to be shipped in three cars. There was no agreement that not more than ten per cent of the three-foot length would be shipped in each car, and in fact no request for such an agreement. This controversy and modification of the original contract was all made before the lumber reached its destination at Erie, Pa.

When the car of lumber reached Erie, Pa., the Edward Eiler Lumber Company complained to plaintiff of the grade of the lum-

ber. Plaintiff advised defendant of that complaint. Defendant called plaintiff's attention to the fact that the sale was made on the basis of the grading rules and specifications of the Southern Pine Association. These rules and specifications provide, among other things:

"In case of complaint regarding grade but not involving measurement (tally), the buyer is required to accept that portion of a shipment of lumber of standard grade or standard or extra standard size which is up to grade or of standard or extra standard size, as the case may be, holding intact that portion thereof the grade or size of which is in dispute, for official association inspection; the action on the part of the buyer in accepting and using such portion of the shipment shall not be construed as his acceptance of the entire shipment; further, the buyer shall pay in accordance with the terms of sale for that portion which he accepts, but acceptance by the buyer of a part of a shipment does not prejudice his just claim on account of any unused material that is alleged by him to be below standard grade or not of standard or extra standard size. The complainant buyer shall hold disputed material intact, properly protected, for not exceeding sixty days, and shall file complaint with seller within ten days from receipt of shipment."

Plaintiff was familiar with these rules and testified that the Edward Eiler Lumber Company was also familiar with them. Defendant requested of plaintiff a compliance with these rules and regulations and asked for an inspection of the lumber by a representative of the Southern Pine Association. It seems that the Edward Eiler Lumber Company had sold this car of lumber to the Baldwin Brothers, and that this company declined to receive the car, or unload it, or permit an inspection, or be bound by the inspection. The correspondence continued for some time. Finally the car was unloaded. The lumber was inspected by an inspector of the Southern Pine Association. About eight per cent of it was found not to come up to the grade of B&B. Defendant then prepared a revised invoice conforming to the inspection and forwarded it to plaintiff. This showed a balance due it from plaintiff of $91.07. This was the basis of its counterclaim.

The Edward Eiler Lumber Company paid the demurrage and extra switching charge, the unloading and storage charges, and charged those up to plaintiff, who seeks to collect them, and a claimed profit on the entire shipment from the defendant in this action as damages.

Appellant complains of the refusal of the court to give requested instructions to the effect that the contract between plaintiff and defendant was made under the rules and regulations of the Southern

Pine Association; that it was the duty of plaintiff, or the firm to which he sold, to carry out the contract in accordance with such rules and regulations, and if the jury should find that the plaintiff, or the firm to which he sold, violated such rules and regulations, then the verdict should be for defendant. The court gave this instruction in substance, but told the jury that both parties were bound to a substantial compliance with the rules and regulations of the association; that the party failing to observe such regulations would not be entitled to recover from the other, and if the failure of one party to comply with the rules and regulations was the proximate cause of loss or damage to the other, the one suffering such loss or damage as a natural and probable result of such failure would be entitled to recover from the other for the damage or loss so sustained. Appellant complains of this part of the instruction. It did tend to confuse the issues before the jury for the reason that the defendant was not seeking damages. He was seeking, by his cross petition, to recover a sum due him under his contract. The court also gave this instruction:

"You are instructed that if you find from the evidence that the defendant failed to substantially comply with the conditions of said contract, as disclosed in the evidence, then you are instructed that the plaintiff would be entitled to recover from defendant any damages which resulted to him as the natural and probable result of such breach of contract."

Appellant complains of this instruction. While not objectionable as an abstract statement of the law, it is erroneous when applied to this case, for the reason that the record discloses no evidence tending to show that the defendant failed to comply with the conditions of the contract on its part.

In answer to special questions the jury found that plaintiff entered into a written contract with the defendant for the purchase of approximately 75,000 feet of lumber, as shown by defendant's acknowledgment of plaintiff's order, the substance of which is hereinbefore given; that the plaintiff made a written contract to sell the lumber to the Edward Eiler Lumber Company; that the Edward Eiler Lumber Company, or its consignee, refused the car on account of the grade of the lumber; that such refusal was communicated by the plaintiff to the defendant; that defendant inquired of plaintiff whether the car had been unloaded after it arrived; that the plaintiff did not instruct the Edward Eiler Lumber Company, or its consignee, to unload the car; that the Edward Eiler Lumber Company,

or its consignee, refused to unload the car and submit the same for inspection; that the defendant ordered an inspection made under the rules of the Southern Pine Association and paid for the inspection, and that the defendant, on June 6, 1926, sent to plaintiff a corrected invoice based on the official inspection. The jury also found that the parties had agreed to reduce the price of the three-foot-length lumber to $18 per thousand and to cancel the contract for the purchase of the balance of the lumber previously ordered. Defendant moved for a judgment in its favor on the answers to the special questions notwithstanding the general verdict. This motion was considered by the court and overruled. Appellant complains of that ruling. We think it was error. The jury in fact found every element necessary for a judgment for defendant; that the sale by defendant to plaintiff was made under the rules and regulations of the Southern Pine Association. These rules provided that if a question was raised as to the grade of the lumber by the consignee it should, nevertheless, be unloaded, and the seller was entitled to have it inspected by an inspector of the association, and the purchaser was required to take all that came up to the specifications. The jury found that the plaintiff never ordered this car to be unloaded, and that the Edward Eiler Lumber Company, or its consignee, refused to unload it. It was the duty of the buyer, the plaintiff in this case, to see that the car was promptly unloaded, hence he can have no charge against the defendant for unloading it. Had it been promptly unloaded there would have been no demurrage, hence he can have no claim against the defendant for demurrage. If the matter had been handled in accordance with the rules and regulations of the Southern Pine Association there would have been no proper charge for storage, hence the plaintiff cannot recover that item from defendant. The findings disclosed that, as between the plaintiff and defendant, plaintiff is the one who broke the contract, hence he is not entitled to the claimed item for profit. Hence from the findings of the jury from the contract, which was in writing and was necessary to be construed by the court, there was no basis for recovery by the plaintiff against the defendant. The jury also found that the defendant ordered and paid for the inspection of the lumber by an official of the Southern Pine Association, and that defendant then sent to plaintiff a corrected invoice made out in accordance with the inspector's report. This invoice, made June 6, 1926, the uncontradicted evidence disclosed, showed a balance due

defendant from plaintiff of $91.07, hence from the answers to the special questions defendant should have recovered from plaintiff.

The judgment of the court below is reversed, with directions to enter judgment for defendant against plaintiff for $91.07; with interest thereon at six per cent since June 6, 1926.