No. 29,644.

THE FEDERAL RESERVE LIFE INSURANCE COMPANY, *Appellant*, v. RIDDELLE L. GREGORY, as an Individual and as Administrator of the Estate of W. H. Gregory, Deceased; D. H. HOLT, VERNON B. HOLT, et al., *Appellees*.

(294 Pac. 859.)

Opinion filed January 10, 1931.

*John G. Egan, E. R. Sloan,* both of Topeka, and *Fred Robertson,* of Kansas City, for the appellant.

*Arthur J. Stanley, Arthur J. Stanley, Jr., Arthur J. Mellott,* all of Kansas City, *T. M. Lillard,* of Topeka, *I. N. Watson* and *John B. Gage,* both of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment sustaining a demurrer to a petition in which plaintiff sought to recover a large sum of money from persons who, while they were officers of the plaintiff corporation, secretly manipulated an issue of its stock to their own profit without notice to the stockholders in general and without the knowledge of the corporation until it was advised thereof by the commissioner of insurance shortly before this action was begun.

To determine the propriety of the court's ruling on the demurrer the substance of plaintiff's petition must be stated at some length. It was alleged that at all times of present concern plaintiff was and still is a Kansas insurance corporation, and that in 1925 the defendants, Riddelle L. Gregory, D. H. Holt, Vernon B. Holt and R. E. Gregory, were officers, directors and agents of the plaintiff corporation, and that one Wesley H. Gregory, now deceased, was also an officer thereof. Riddelle L. Gregory is administrator of the estate of Wesley and is also made a defendant herein.

Plaintiff alleged that in 1925 the above-mentioned parties, while officers, directors and otherwise connected with the plaintiff corporation, conspired together to obtain for themselves certain capital stock of plaintiff at a price greatly below its real value, and to sell the stock so obtained at a sum far in excess of what they paid for it and to pocket the profit.

It is alleged that during the formation and prosecution of the purposes of this conspiracy the board of directors of this corporation was completely under the domination of defendants and acted in all matters pertaining to its affairs in abject obedience to the dictates of these defendants. In 1928 certain other parties, the Reserve Company, E. W. Merritt, Jr., Massey Wilson, W. K. Herndon and C. H. Willbrand, defendants herein, joined the alleged conspiracy and participated in the matters herein complained of. During the times of present concern the defendant D. H. Holt purported to serve as trustee of plaintiff's stock, but used his official position as such trustee to aid in carrying out the selfish purposes of his codefendants. The petition alleged—

"6. That during the time herein complained of they, the said defendants, together with said W. H. Gregory and R. E. Gregory, so maneuvered the stock issues of this plaintiff that they were able to issue and cause to be issued, and to have come into their hands and be disposed of by them, about ten thousand shares of said capital stock, the exact number of which plaintiff cannot give, for which they procured and appropriated to their own use and benefit, above what it cost them, the sum of $365,840, which belonged to and should have gone into, and now belongs to, the treasury of plaintiff, but none of which plaintiff has ever received. That thus and thereby said defendants, including said defendant Riddelle L. Gregory, administrator of the estate of said W. H. Gregory, deceased, have become and are indebted to this plaintiff in the sum of $365,840, no part of which has ever been paid.

"7. That the dates, details and circumstances whereby said defendants, including said W. H. Gregory, R. E. Gregory, and their said coconspirators, have thus defrauded this plaintiff of the amount as aforesaid, cannot be given

with more particularity or detail because of lack of information in that regard; that many of the records, books and papers pertaining to the transactions whereby said fraud was executed have been spirited away from the office of plaintiff, and are not accessible to it, but will have to be made use of by it hereafter pursuant to such legal rights as plaintiff may have to compel production thereof.

. . . . . . . . . . . . .

"9. That because of the interests of defendants being inimical to and in conflict with those of this plaintiff, and the remainder of the directors, officers and representatives of plaintiff, being under the influence, control and domination of defendants as aforesaid, this plaintiff had no notice, information or knowledge of the wrongs herein complained of until the same were disclosed to it by the commissioner of insurance of the state of Kansas, about December 1, 1929.

"Wherefore, plaintiff prays judgment . . ."

Defendants' demurrer was sustained on the single ground that the petition did not state a cause of action.

It will be convenient to note first the arguments adduced to support the judgment. Counsel for defendants make the point that a conspiracy among the appellees to defraud the corporation would not give rise to a civil action. Quite correct. It is not the conspiracy itself, but the wrongful acts or omissions in pursuance of the conspiracy which constitute the cause of action. (*Rizer v. Geary County,* 58 Kan. 114, 48 Pac. 568; 12 C. J. 581, 582.) Counsel also invoke the rule that general allegations of fraud and illegality, without stating the facts upon which the charge is based, present no issue and are demurrable for insufficiency. (*Ladd v. Nystol,* 63 Kan. 23, 65 Pac. 985.) With that rule in mind defendants insist that actionable fraud is not alleged by plaintiff's petition, no injury to the plaintiff corporation pleaded, no wrong to plaintiff caused by defendants' trafficking in its corporate stock, no discrimination against other stockholders alleged, and that the corporation itself is not the proper party to call defendants to account, even if they did traffic in its stock to the disadvantage of their fellow stockholders.

The demurrer concedes the truth of the matters alleged in plaintiff's petition. In the early case of *Stewart v. Balderston,* 10 Kan. 131, 148, it was said:

"Both at common law and in chancery, upon a demurrer to a pleading, everything stated in the pleading was taken to be true that was well pleaded, and nothing was taken to be true that was not well pleaded. [Citations.] But under our code system of practice it would seem that the rule that noth-

ing is to be taken as true, unless well pleaded, has been greatly modified. It would now seem from the decisions, where no motion has been made to have the pleading made more definite and certain, or to have the several causes of action or grounds of defense separately stated and numbered, or to have the pleading corrected and made more formal in some other respect, that, on a demurrer to the pleading, everything stated therein should be taken as true, and be considered by the court, whether well pleaded or not. (Civil code, § 115.)"

When no motion is leveled against a petition to make it more definite and certain, the pertinent rule of the code must be obeyed. Its mandate is—

"In the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties." (R. S. 60-736.)

Defendants criticize the paucity of specified details in the petition concerning the alleged wrongdoing of defendants, but the seventh paragraph of the petition, which explains the lack of details, cannot be ignored. It would be a harsh application of the rule requiring the particulars of a fraudulent transaction to be fully pleaded to hold a petition fatally defective which is somewhat wanting in that respect when the pleader frankly alleges, and the demurrer admits, that the particulars of the fraud are not known to the pleader but are fully known to the demurrant. The demurrer in this case admits that while the affairs of this corporation were under the domination of these defendants and of a cat's-paw board of directors the stock transaction complained of was perpetrated, and the records, books and papers which pertain thereto have been abstracted from the office of plaintiff and are and will be inaccessible until legal process can be instituted for their production. The rule that the specific facts of a fraudulent transaction must be pleaded is not to be so rigidly applied, as against a demurrer, that the parties who perpetrated the fraud may keep their ill-gotten gains because they have abstracted and concealed the books and papers which should contain a record of it, and where the details of the transaction were perpetrated in secret and are not within the knowledge of the defrauded party but well known to the parties which committed it.

After certain preliminary allegations of inducement the petition alleged that defendants entered into a conspiracy in 1925 to get hold of certain stock of appellant at a sum greatly below its real

value for the purpose of selling it at a profit to put in their own pockets instead of into the treasury of the corporation. It is alleged that that project was accomplished by procuring to be issued to themselves about 10,000 shares of the capital stock of the par value of $10 per share; that this issue was authorized in some undisclosed fashion in 1926; and that the purposes of the conspiracy were fully accomplished in 1928. It is alleged that this transaction was effected while defendants were officers and agents of the plaintiff and bound to act in its behalf and to guard its interests, and not to use their official powers for their personal profit. It is alleged that this stock transaction was effected without notice to the company or to its other stockholders. It is substantially alleged that 10,000 original shares of stock were issued to the defendants or to D. H. Holt for them and forthwith purveyed to others at a profit of $365,840. Being officers of the corporation, it was their duty to offer this stock for sale at the highest available price and to account for the proceeds to the corporation itself. The argument is advanced that corporation officials are not precluded by statute or rule of law from buying and selling its stock for their personal advantage. Within limits that contention may be true, but it does not apply to the situation where an original issue of additional stock is created so as to permit the officers to buy that stock for themselves secretly and without notice and opportunity to the other stockholders to participate *pro rata* in its purchase. It is idle to contend that such a transaction does not discriminate against the other stockholders. In *Agricultural Society v. Eicholtz*, 45 Kan. 164, 25 Pac. 613, it was said:

"The effort on the part of the directors and officers of a society to obtain the unsubscribed stock at par, when they knew that each share of the stock already issued was worth eighteen times its face value, was clearly a fraud upon the rights of the other stockholders, and a flagrant violation of their duties as directors and officers of such association. The officers and directors of a corporation are trustees of the stockholders, and in securing to themselves an advantage not common to all the stockholders they commit a plain breach of duty. [Citations.] The law does not permit directors to manage the affairs of a corporation for their personal and private advantage, and this rule, we think, applies to the disposition of unsubscribed stock, as well as to other contracts. The character and relation of directors and officers of a corporation require of them the highest and most scrupulous good faith, in their transactions for the corporation and the stockholders. [Citations.]" (p. 166.)

See, also, *Oil & Gas Co. v. Overfield,* 113 Kan. 294, 297, 298, 214 Pac. 809.

It is the preëmptive right of every stockholder, subject to exceptions not here pertinent, to participate fairly and *pro rata* in the purchase of additional shares of stock authorized by the corporation. (Am. Law Inst., Business Ass'ns, T. No. 1, sec. 12 (2); Commentaries Business Ass'ns, T. No. 1, pp. 17-27.)

In 13 C. J. 418 it is said:

"Contracts are invalid which tend to induce promoters, stockholders, or officers of corporations to act in disregard of the true interests of the corporation and its other stockholders."

One allegation of the petition is that defendants, by the advantage of their authority as officers and directors and because of their domination of the board of directors, obtained the stock at a grossly inadequate price and sold it for what it was worth and pocketed the difference—$365,840. Conceding the truth of that averment, plaintiff was the proper party to bring the action to recover that sum which in equity and good conscience belonged to the corporation.

In *Sargent v. K. M. Rld. Co.,* 48 Kan. 672, 688, 29 Pac. 1063, it was said:

"No director of a railroad company or any other corporation can use his official position to secure a personal advantage to himself. A contract made by a director under such circumstances is either void or inures to the benefit of the corporation of which he is an officer. [Citations.]"

In *Western States Life Ins. Co. v. Lockwood,* 166 Cal. 185; id. 173 Cal. 734, an insurance company had been engaged in the sale of its capital stock through agents at a specified price of $13 per share for the first 50,000 shares and $15 per share for the remaining 50,000 shares of its authorized capital stock. The president of the corporation, who was also a member of its board of directors, secretly became a partner of the agents in the net profits received and to be received by them under their agency contract. Under this secret arrangement he did receive a share of these profits, without notice to or knowledge of the corporation. It was held that he must account to the corporation for the secret profits, and that it was immaterial that the corporation may not have been damaged by the transaction—as such secret profits belong to the corporation for the benefit of its stockholders. Two sections of the syllabus of the first opinion read:

"Any secret profit obtained by the president or a director of a corporation by reason of any violation or disregard by him of any of the obligations incident to the fiduciary or quasi trust relations that he occupies toward the corporation and its stockholders, cannot be retained by him, but must be accounted for to the corporation.

"Such an officer, and especially a director who is president of the corporation, is obligated, by reason of his mere occupancy of the office, to act in all matters affecting the corporation and its stockholders, solely with an eye ·to their best interests, unhampered by any pecuniary interest of his own. The law in this regard is so strict that he is not allowed to assume a position that is possibly adverse to his fiduciary duty." (Syl. ¶ ¶ 1, 2.)

To the same effect is *Provident Trust Co. v. Geyer*, 248 Pa. 423; and see, also, *Pollitz v. Wabash R. R. Co.*, 207 N. Y. 113.

Counsel for appellees cite cases which hold that stockholders are entitled to purchase new issues of stock at par. Whether that rule would be applicable here if the entire body of stockholders had been apprised of the proposed distribution of additional stock and had been given an opportunity to buy proportionate amounts of it corresponding to their existing stock ownership, we need not inquire, since no such notice and opportunity was given them. And not only the shareholders but the policyholders of the company have a substantial interest, perhaps a vital one, in the corporation's recovery of the illegal profits of defendants' manipulation of the corporation's stock complained of in this action.

The other objections to plaintiff's petition have been carefully considered, but they do not warrant further discussion.

The judgment of the district court is reversed and the cause remanded with instructions to set aside its ruling on the demurrer and to permit issues to be joined and to proceed with the cause.

SMITH, J., not participating.