No. 36,431

J. H. KERBY and WARREN H. KERBY, Partners, doing business as THE K-M SECURITIES COMPANY, *Appellants*, v. JOHN BOTT, *Appellee* (D. J. BRIGGS, Defendant).

(164 P. 2d 84)

December 8, 1945.                                                              Opinion filed

*W. M. Beall*, of Clay Center, argued the cause, and *F. R. Lobaugh*, of Washington, was on the briefs for the appellants.

*J. R. Hyland*, of Washington, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action against the maker and the payee, endorser, of a promissory note. The endorser defaulted and judgment was rendered against him. The trial was by jury on issues

joined by the holders of the note and the maker. Judgment was for defendant and plaintiffs appeal.

The plaintiffs were J. H. Kerby and Warren H. Kerby, doing business as The K-M Securities Company of Clay Center, Kan. The defendant was a farmer and resided approximately twenty-five miles from Clay Center.

The appeal is from the order overruling plaintiffs' demurrer to defendant's evidence and from orders overruling motions for judgment notwithstanding the general verdict; to set aside certain special findings of fact; and for a new trial.

The only pleaded defenses which we need notice presently, in view of the evidence before us, were (1) the execution of the note was induced by fraud; (2) the note was without consideration; (3) there was a fraudulent conspiracy between plaintiffs and the endorser; and (4) plaintiffs were not otherwise holders in due course.

Appellee's evidence sufficiently established, to withstand a general demurrer, that the note was procured by the payee through false and fraudulent representations and without consideration. Appellants do not now seriously contend otherwise. With the fraudulent procurement of the note established, the statute, G. S. 1935, 52-509, placed the burden on appellants to show they were holders in due course. (G. S. 1935, 52-509; *Pioneer Trust Co. v. Combs*, 117 Kan. 89, 90, 230 Pac. 302; *United Finance Plan v. Meier*, 147 Kan. 688, 78 P. 2d 904, and cases therein cited.)

Appellants' evidence, in substance, disclosed:

They operated their business at Clay Center; the note was executed October 13, 1943, for the principal sum of $2,500, and was payable in ninety days at eight percent interest; appellants purchased the note from the payee, D. J. Briggs, October 15, 1943; they first learned of the note when Joe Haynes, formerly a banker at Clinton, called J. H. Kerby by telephone from Clinton a day or two before the purchase; Haynes advised a man by the name of D. J. Briggs held the note, that the note was negotiable and that he (Haynes) would buy the note if he had available funds; on October 15 Briggs appeared at the office of appellants with the note; J. H. Kerby did not immediately purchase the note; he did not know what the consideration for the note was; he made inquiry of Briggs, but Briggs did not tell him very much; he called Haynes by telephone at Clinton, described the note and the holder whom Haynes identified as the man whom he had previously mentioned to Kerby;

J. H. Kerby was personally acquainted with the maker, John Bott, by reason of previous banking negotiations he had with Bott while he, Kerby, was an officer in a bank at Clay Center; he knew Bott as a successful farmer and believed he would pay any note he signed; he knew Bott lived only twenty-five miles from Clay Center and he had been on Bott's farm some years previously; he did not inquire of Bott concerning the consideration or validity of the note; he knew little concerning Briggs, the payee and endorser; he knew nothing of Briggs' financial responsibility but thought he owned some land near Clyde; he purchased the note on the strength of Haynes' recommendation and his knowledge of Bott; he bought the $2,500 note, bearing interest at eight percent, for $2,200, that is, at a $300 discount not including $50 interest due at maturity; he did not pay the entire $2,200 to Briggs but, at the request of Briggs, paid Briggs $2,150 and paid the remainder of the consideration, namely $50, to Haynes, who had recommended the note; the usual rate of discount in that vicinity was ten percent or more; on the date of purchase appellants advised appellee by mail they were the owners of the note and that payment, when due, should be made at their office; appellants also wrote appellee a number of letters later and advised the note was due, and requested payment thereof; appellee made no reply to any of the letters.

Appellee's evidence disclosed Bott lived only seven miles north and one and one-half miles east of Clinton.

Were appellants holders in due course? G. S. 1935, 52-506 reads:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

G. S. 1935, 52-502 reads:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Appellants met requirements (1) and (2) of the last quoted statute. Did they meet the burden of proof with respect to requirements (3) and (4)? Appellee contends only the jury could decide that question under the evidence in this case. Appellants agree that

whether evidence is sufficient to meet requirements (3) and (4) is ordinarily a question for the jury but they contend there is an exception to that general rule and that their evidence brings them within the exception. Relative to the exception to the general rule they rely on what was said in *Pioneer Trust Co. v. Combs,* supra, as follows:

"Where because of fraud in the inception of a note the plaintiff has the burden of proving that he is a holder in due course, the question whether he has met the requirement is ordinarily one for the jury. (*Trust Co. v. Gill,* 113 Kan. 261, 270, 214 Pac. 413.) There is, however, an exception to this general rule, recognized by this and many other courts, which has been thus expressed: 'unless that evidence is so clear and unequivocal as to leave no room for difference of opinion among fair-minded men.' (*Beachey v. Jones,* 108 Kan. 236, 195 Pac. 184.) That situation arises where the plaintiff accounts for his good-faith ownership by evidence which is not intrinsically improbable, and is not contradicted or impeached by, or inconsistent with, other evidence or inferences fairly to be drawn therefrom." (p. 90.)

Was appellants' own evidence when considered in its entirety so clear and unequivocal that it, together with inferences fairly to be drawn therefrom, would leave no room for difference of opinion among fair-minded men? In the Pioneer Trust Co. case, *supra,* all the evidence of plaintiff was by deposition. Here the evidence of appellants, previously related, was the testimony of J. H. Kerby and it was given before the jury. Who was to determine what impression he made on the jury, what weight and credence should be given to all or to portions of his testimony? Was the jury obliged to believe, and did it believe, he related all he knew, or may have suspected, concerning the note in question? While there was no other direct testimony with respect to the usual discount the jury may have been skeptical about it. In fact, it may not have believed it. Kerby inquired of Briggs concerning the consideration for the note but Briggs did not tell him much. Was that not a suspicious circumstance? Part of the purchase price of the note was paid to Haynes of Clinton who had recommended the note. Was the jury compelled to believe that Kerby thought Haynes' recommendation was free from bias and that the request to pay $50 to Haynes created no suspicion in the mind of Kerby with respect to the note? Can we say that, upon consideration of all the circumstances, the jury was wholly wrong in believing Kerby should have contacted the maker before purchasing the note? Is there no foundation for believing that probably Kerby did not want to learn more about this note?

We think courts would not be justified in resolving, as a matter of law, all the factual questions here involved.

We pause to observe this is not a case involving the acceptance of a note by a bank from a correspondent bank in the regular channels of trade and business, or a similar transaction, free from suspicious circumstances. From what has been said it must not be inferred that this court is passing on the question of the good faith of Kerby or Haynes. That is precisely what we are not doing. We simply say the evidence was sufficient to warrant the trial court in submitting to the jury the issue of holder in due course.

This brings us to the special findings of the jury and the post-trial motions. The special findings were:

"1. Did D. J. Briggs induce John Bott to sign the note in question in this case, by false and fraudulent statements made to him, as claimed by Bott in this case? A. Yes.

"2. Did the plaintiffs have any notice of any infirmity in the note at the time they acquired it? A. Yes.

"3. If you answer Question 2 in the affirmative, specify the nature of such notice of infirmity. A. Sacrifice of said note under such short ownership.

"4. If you answer Question 2 in the affirmative, what was such infirmity? A. Character of person disposing of note.

"5. Did the plaintiffs have any notice of any defect in the title of Briggs when he negotiated the note to plaintiffs? A. Yes.

"6. If you answer Question 5 in the affirmative, specify the nature of such notice. A. No license from the State of Kansas.

"7. If you answer Question 5 in the affirmative what was such defect? A. Promoter of questionable oil stock and other securities.

"8. Were the plaintiffs guilty of any bad faith in the purchase of the note? A. Yes.

"9. If you answer Question 8 in the affirmative, specify of what said bad faith consisted. A. Failure of investigation."

Appellants' motion for judgment on the entire record was not filed until the jury had returned the general and special verdicts. But even if considered as though it had been presented promptly at the close of all the evidence it could have been tantamount only to a motion for a directed verdict based on the theory that reasonable minds could not differ in their conclusion as to whether appellants were holders in due course. So considered, as previously indicated, the motion was properly overruled.

Appellants also moved for judgment on the ground the special findings were inconsistent with the general verdict, with each other, and that they were contrary to the evidence. The same grounds were alleged in a motion to strike all of the findings except finding

No. 1. The last mentioned finding therefore stands and it is consistent with the general verdict. The other findings, if accepted as true, are not inconsistent with the general verdict for the reason they do not affirmatively show appellants were holders in due course. The special findings therefore do not compel judgment for appellants. The special findings could not be set aside on the ground they were inconsistent with each other. Findings six and seven will be treated presently.

Appellants complain concerning the exclusion of certain letters they wrote to Bott requesting payment of the note. The trial court admitted in evidence one of the letters and admitted in evidence the fact that the other letters demanded payment. The letters contained irrelevant, incompetent and self-serving declarations. The ruling was proper.

But what about the motion for a new trial? One of the grounds of the motion was that the verdict was given under the influence of passion or prejudice. If there was testimony in support of findings six and seven it is not disclosed by the record before us. There is nothing which even remotely justifies those findings insofar as any consideration for the instant note is concerned. The testimony of J. H. Kerby was that he did not know Briggs was a dealer in oil stocks and securities. There is no testimony that he did know that fact. So far as the record before us is concerned those special questions should not have been submitted to the jury. One of the pleaded defenses to the note, which we did not previously mention for the reason that there is no evidence in the record here to support it, was that Briggs was a dealer in oil stocks and speculative securities and possessed no permit from the state of Kansas to engage in such business. On oral argument we were advised the alleged defense was included in the instructions as a part of the pleadings. Portions of pleadings which are without support in the evidence should not be included in the instructions. (*Houghton v. Sabine Lumber Co.*, 128 Kan. 584, 589, 278 Pac. 758; *Boss v. Brown*, 132 Kan. 86, 89, 294 Pac. 878; *Pirott v. Heinen*, 137 Kan. 186, 193, 19 P. 2d 723.) Such pleadings frequently confuse jurors and produce prejudice. That is particularly true of pleadings which charge a violation of law such as those here involved.

It is true there were no objections to the instructions but that does not alter the fact the jury made damaging findings outside the record which undoubtedly weighed in its consideration of the

general verdict. Appellants expressly asked to have them stricken on the ground they were not supported by the record. Moreover on appellee's own theory this note was not given in consideration of a sale of oil stocks or speculative securities by Briggs to Bott. Appellee's contention was he did not buy anything from Briggs, the note was without consideration, and that he did not know he was signing a note. In view of these circumstances we think it affirmatively appears appellants did not have a fair trial.

The judgment is reversed with directions to grant a new trial.

THIELE, J., not participating.

HARVEY, C. J. (dissenting in part): I concur in holding stated in paragraph 1 of the syllabus and in subdivisions 1, 2 and 3 of paragraph 2 of the syllabus, but dissent from the holding in subdivision 4 of paragraph 2 of the syllabus, and dissent from the order of reversal and granting a new trial. I think the judgment of the trial court should be affirmed.