No. 43,534

First National Bank in Dodge City, Kansas, *Appellant* and *Cross-Appellee,* v. Leo Keller, *Appellee* and *Cross-Appellant.*

(396 P. 2d 304)

Opinion filed November 7, 1964.

*James A. Williams,* of Dodge City, and *George Stallwitz,* of Wichita, argued the cause, and *Byron G. Larson* and *George Voss,* both of Dodge City, *W. F. Lilleston, George C. Spradling, Henry V. Gott, Ralph M. Hope, Richard W. Stavely, Charles S. Lindberg,* and *Ronald M. Gott,* all of Wichita, were with them on the briefs for the appellant.

*Corwin C. Spencer,* of Oakley, argued the cause, and *C. A. Spencer,* of Oakley, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This was an action to recover damages resulting from an alleged conspiracy to obtain credit by a "draft kiting" arrangement.

The basic facts are not in dispute. The dispute largely involves the inferences to be drawn from the facts.

Everett Robinson had for many years engaged in the business of buying and selling cattle and other livestock. His business headquarters were at Ness City, Kansas. He was extensively known as a cattle dealer and trader and had a reputation throughout the

cattle raising area of the United States as a man of high financial responsibility and integrity.

On February 27, 1961, Robinson opened a regular commercial bank account with plaintiff. The officers of plaintiff were familiar with the reputation of Robinson, having many customers who had dealings with him and having seen many of his checks and drafts being paid to its customers. Plaintiff, First National Bank in Dodge City, Kansas, received a financial statement from Robinson showing that he had a net worth in excess of $200,000. On the basis of the financial statement and the reputation of Robinson, plaintiff opened the account and also loaned Robinson the sum of $70,000. Robinson executed the plaintiff's regular form of depository agreement showing the terms and conditions under which the account was to be carried. Robinson stated he would buy and sell approximately $200,000 worth of cattle per week and that he would pay for livestock he purchased by check drawn against his bank account and drafts drawn upon him by the sellers. He stated that he would receive payment for cattle which he sold by checks which he would deposit in his account and also by depositing drafts drawn upon the purchasers of the cattle. Plaintiff agreed to and later did give Robinson immediate credit upon many such cattle drafts and allowed him to write checks and drafts against the balance represented by such drafts.

Mr. Louis Luetters was Robinson's bookkeeper and handled most of his banking transactions. Luetters, under authority from Robinson, would draw drafts and prepare the daily deposits made by Robinson in his account with plaintiff. He also kept the books and records showing the sale, purchase, delivery and receipt of cattle by Robinson.

After Robinson had sold and shipped cattle, Luetters would draw a draft upon the purchaser. The draft was executed by Robinson as drawer, payable to the order of Robinson as payee in the amount of the sale price of the cattle. The drawee of the draft was the purchaser of the cattle. Each draft included a notation in the upper left corner stating the head count, the sex, the weight, and price per hundred or per head of the cattle which were the subject of the draft. The draft was endorsed in blank by Robinson or Luetters and deposited in Robinson's account with checks received by him. Luetters would personally deliver the deposit to plaintiff. One of the bank's vice-presidents, either Mr. Hess or Mr. Perrier,

would go over each deposit with Leutters questioning him concerning all of the items in the deposit. They would then enter the deposit in Robinson's account and send the drafts so deposited by United States mail to the Commerce Trust Company, its correspondent bank in Kansas City, for acceptance and payment by the drawee of the draft.

Robinson stated at the time the account was opened that he generally conducted business with six to ten regular customers, and that the defendant, Mr. Leo Keller, of Oakley, Kansas, was one of them. Keller did business under the name of Oakley Sales Co. and Oakley Livestock Commission Co. Plaintiff, with the approval of Robinson, indicated it would check into the financial condition of each of his regular customers.

Robinson drew 35 drafts upon defendant and deposited them in his account with plaintiff. Defendant accepted and paid 33 of the drafts. He did not pay the last two drafts presented to him which were drawn for the total sum of $44,518.30, the amount involved in plaintiff's action. The 33 drafts paid by defendant totaled approximately $725,000. The notations on the 35 drafts during this period of time indicated a sale and shipment of 5,140 head of cattle to defendant. The defendant actually received only 595 head of cattle worth approximately $78,000. Defendant never received cattle from Robinson equaling the value of the drafts drawn upon him. In order to reimburse himself he drew a draft back on Robinson or accepted a check from Robinson in the amount he paid out above the value of the cattle received.

The defendant testified that when he accepted and paid a draft drawn on him by Robinson he believed he was purchasing cattle. When the cattle did not arrive defendant called Robinson and was informed that the cattle had been sold to someone else in route and the defendant could draw on Robinson for the amount of the draft plus commission.

Neither the plaintiff nor the defendant talked to the other about their arrangements with Robinson and neither in their dealings with Robinson relied on the statements of the other.

The defendant received $2,255.90 as commission from Robinson by virtue of the reimbursement drafts upon cattle purchased from Robinson but not received by the defendant.

The plaintiff would charge and collect by debit to Robinson's account a service charge of $.50 per $100 per month on the "float."

Plaintiff received as a service charge the sum of $1,582.16 for the month of March, 1961, the sum of $1,952.22 for the month of April, 1961, and the sum of $1,843.62 for the month of May, 1961. Robinson had dealings with persons other than the defendant through his account with the plaintiff bank which resulted in a loss to plaintiff. Plaintiff has sustained a loss of $318,618.21 upon drafts which were credited to Robinson's account and which were returned unpaid long after May 29, 1961. Robinson was adjudged a bankrupt on June 7, 1961.

Plaintiff brought this action to recover damages from the defendant in the sum of $44,518.30, which is the sum of the last two drafts which Robinson drew on defendant and defendant refused to pay. Plaintiff is seeking to recover damages against the defendant resulting from an alleged conspiracy between Robinson and the defendant and is not seeking to recover on defendant's liability on the drafts.

The defendant answered and also filed a setoff and counterclaim in which he sought to recover from the plaintiff the sum of $123,973.08 for four drafts which it had drawn on Robinson's account and which plaintiff had refused to honor.

The trial court sustained a motion for a directed verdict as to the setoff and counterclaim. The jury returned a general verdict in favor of the defendant on plaintiff's claim and the trial court entered judgment thereon. The plaintiff has appealed from the verdict and judgment and the defendant has cross-appealed from the trial court's order directing a verdict for the plaintiff on defendant's setoff and counterclaim.

The appellant first contends that the trial court erred in refusing to direct a verdict in its favor when the only reasonable inference which could be drawn from the undisputed evidence was that the appellee conspired and participated with Robinson in a "draft kiting" scheme which enabled Robinson to fraudulently obtain credit from the appellant bank and as a consequence thereof it suffered damages.

The appellant suggests that where the evidence reasonably admits of but one conclusion and clearly shows the right of the plaintiff to a verdict a motion for a directed verdict should be sustained. (*Missouri Pacific Rld. Co. v. Richards*, 158 Kan. 178, 146 P. 2d 359; *Johnson, Administrator v. Huskey*, 186 Kan. 282, 350 P. 2d 14.)

We take no issue with appellant's statement of the law but we

cannot agree with appellant's factual conclusion or the inference which it draws from the evidence. The evidence tends to show that both parties had implicit confidence in the financial responsibility and integrity of Robinson and that each was taken in by him without any fraud or misrepresentation on the part of the other. However, this court should not indulge in specific inferences to be drawn from the evidence. In testing the sufficiency of the evidence on demurrer or on a motion for a directed verdict the evidence and the inferences that could be properly drawn therefrom must be considered in the light most favorable to the party against whom the motion is directed, and if the evidence and the inferences viewed in that manner are of such character that reasonable minds, in the exercise of impartial judgment, may reach different conclusions thereon, the demurrer or the motion for directed verdict should be overruled and the issues submitted to the jury. (*Reda v. Lowe*, 185 Kan. 306, 342 P. 2d 172; *Creten v. Chicago, Rock Island &Pac. Rld. Co.*, 184 Kan. 387, 337 P. 2d 1003; *Bishop v. Huffman*, 177 Kan. 256, 259, 278 P. 2d 588.)

The appellant presents and argues 14 alleged trial errors. Many of the objections go to the admission of evidence. The appellant appears to overlook the fact that it was attempting to prove a conspiracy to defraud by inferences or suspicious circumstances. It would deny the appellee the right to refute such proof by showing that the conduct and relationship between the appellant and Robinson raised the same inferences of negligence and bad faith. The appellee had the right to introduce any evidence which tended to show that the damage suffered by appellant was due to its own acts and omissions rather than those of appellee.

Appellant contends that the alleged negligence or contributory negligence of appellant in its dealing with Robinson did not constitute a defense to an action against appellee for fraudulent conduct inducing appellant to extend credit to Robinson. We think it does where no information or representation has passed between the parties and the appellant seeks to prove the conspiracy by inferences and circumstances growing out of the transaction between the appellee and Robinson. Under such circumstances the appellee had the right to introduce evidence to prove that the negligence of appellant in dealing with Robinson raised the same inferences against the appellant bank as it sought to charge the appellee.

The appellant alleges error because the trial court did not instruct

the jury concerning the definition of a civil conspiracy. The contention is without merit. Without the use of the words "civil conspiracy" the court in its instructions set forth the facts which must exist in order for the appellant to sustain its cause of action. The gist of the action was not the conspiracy itself but what was done under the alleged conspiracy and the wrongful acts in pursuance of the conspiracy resulting in damages to the appellant. (*Federal Reserve Life Ins. Co. v. Gregory*, 132 Kan. 129, 294 Pac. 859.)

The appellant asks the question:

"Did the trial court err in failing to instruct the jury that the silence and course of conduct of appellee which materially contributed to the granting of credit to Robinson constituted sufficient proof for appellant to recover?"

Such an instruction would have been nothing less than a directed verdict. There was no evidence that the appellee was ever informed or knew of the relationship between the appellant and Robinson. The silence and course of conduct of the appellee was to be weighed by the jury along with the other evidence. The court in its instructions should not select for emphasis a conclusion which may have been incorporated in the petition but which may or may not have been supported by evidence. (*Houghton v. Sabine Lumber Co.*, 128 Kan. 584, 278 Pac. 758; *Kerby v. Bott*, 160 Kan. 566, 164 P. 2d 84; *Schmid v. Eslick*, 181 Kan. 997, 317 P. 2d 459.)

The appellant contends that the trial court erred in admitting testimony concerning the custom and practice in the cattle industry of accepting and paying drafts when cattle have not been received thereon, when such practice or custom has not been pleaded and it is not shown to have been communicated to the appellant.

Appellant calls our attention to *Dearborn Motors Credit Corporation v. Neel*, 184 Kan. 437, 337 P. 2d 992 in which this court ruled that a party who relies upon a custom or practice must plead it, and *Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692 in which the rule was announced that a party who attempts to establish a custom must show that the opposing party has knowledge of it. We have no quarrel with the general rules as announced in the above decisions. However, like most general rules there are exceptions. A party must plead a custom or practice and establish the fact that the opposing party has knowledge of it when the custom or practice goes to the merits of the case such as affecting or establishing a contractual relationship. Where custom or usage

is incidental merely and is not relied upon as proof of the main issue in the case it need not be specially pleaded. Where evidence of custom or usage is introduced only to establish an intent or a state of mind on the part of an individual it need not be shown that the opposing party has knowledge of the custom or practice.

The appellee pled in his answer as follows:

". . . and this defendant alleges that each and every business transaction entered into between him and the said Robinson were believed by this defendant to be regular in all respects, and further alleges that each and every draft drawn by or on behalf of this defendant on the said Robinson was for a good and valuable consideration."

The evidence of the practice or custom was introduced to show the belief or state of mind of the appellee. In 55 Am. Jur., Usages and Customs, § 49, p. 311, the rule is thus stated:

"An exception to the general rule requiring the pleading of a custom or usage is to be found in those cases where such matter is relied upon merely as incidental to the main issues or as evidentiary of some fact in issue rather than as the direct basis of a contractual or other obligation. Where such is the purpose of the evidence, the custom or usage so relied upon need not be alleged. The purely incidental or evidentiary use of customs and usages which have not been alleged in the pleadings is found in many negligence and personal injury cases. The rule is well settled that where a petition charges common-law negligence, the existence of a custom is merely evidentiary and need not be pleaded as such evidentiary fact. . . ." (See, also, 25 C. J. S., Customs and Usages, § 32, p. 125; *Rains v. Weiler*, 101 Kan. 294, 166 Pac. 235.)

In the present case the appellee was not attempting to charge the appellant with the custom or practice which would require the appellant's knowledge thereof, he was simply attempting to refute an inference of fraud and collusion by establishing his belief that all his transactions with Robinson were regular.

Having considered other alleged trial errors and carefully examined the record we find no error which would justify granting appellant a new trial.

We next consider appellee's cross-appeal.

Appellee filed his setoff and counter claim in this action in four counts seeking to recover from the appellant damages for its failure to pay certain drafts drawn by appellee on Robinson through the appellant bank. The first two counts cover drafts in the amount of $52,399.38 and $21,040.00 respectively or a total of $73,439.38. These items covering two drafts had been accepted by Robinson and the appellant for payment. The other two counts covered

drafts in the amount of $24,954.50 and $25,579.20 but were never accepted for payment. The trial court directed a verdict in favor of the appellant on appellee's evidence. The appellee has filed his cross-appeal alleging error in the order directing a verdict. He is not seriously questioning the propriety of the order directing the verdict insofar as it applies to counts three and four based on drafts which were not accepted for payment. At the time the two drafts were accepted Robinson was indebted to the appellant bank in the amount of $318,000 because of numerous drafts on other persons for which he had received credit by the bank in his account but which has been returned unpaid. At the same time Robinson had in his bank balance or checking account only the sum of $154,057.35.

Appellee contends that the two drafts having been accepted at a time when there was sufficient funds in Robinson's account, the appellant is obligated to pay them.

The two drafts were accepted for payment May 29, 1961. May 30, 1961, was a holiday. The appellant had until midnight May 31, 1961, to revoke the acceptance to the drafts or credit given on them. This it did.

This controversy would appear to be disposed of by the provision of G. S. 1949, 9-1210 which provides in part:

"In any case in which a bank receives, other than for immediate payment over the counter, a demand item payable by, at or through such bank and gives credit therefor before midnight of the day of receipt, the bank may have until midnight of its next business day after receipt within which to dishonor or refuse payment of such item. . . ."

Before the time appellant had to either pay appellee's drafts on Robinson or claim a right to setoff, it knew that Robinson owed it more than he had in his bank account. The appellant exercised its right to setoff the balance in Robinson's account against what he owed (G. S. 1949, 9-1206) and refuse to pay the drafts.

We are forced to conclude that the trial court properly directed a verdict in favor of the appellant as to appellee's setoff and counter-claim.

The judgment is affirmed.

APPROVED BY THE COURT.